[No. E005085. Fourth Dist., Div. Two. Mar. 10, 1989.]

UNITED ARTISTS COMMUNICATIONS, INC., et al., Plaintiffs and Appellants, v.
CITY OF MONTCLAIR et al., Defendants and Respondents.

**COUNSEL**

Lillick, McHose & Charles, Barry J. London and Michelle M. Marchant for Plaintiffs and Appellants.

Demchuk, Krueger & Robbins and Dennis A. Krueger for Defendants and Respondents.

James K. Hahn, City Attorney (Los Angeles), Pedro B. Echeverria, Richard A. Dawson, Assistant City Attorneys, and Michael L. Klekner, Deputy City Attorney, as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**McDANIEL, J.**—United Artists Communications, Inc., Vista Theaters, Inc., and General Cinema Theatre Corporation of California (plaintiffs) have appealed from a judgment in favor of the City of Montclair (City) and Ned Crutcher, City's director of finance (collectively defendants), which was entered following a trial to the court of plaintiff's action for declaratory and injunctive relief related to the constitutionality of the City's admissions tax.

## FACTS

In October 1986, the City of Montclair passed Ordinance No. 86-630, which added article 5 to chapter 5 of title 3 of the Montclair Municipal Code.

Article 5, known as the "Admissions Tax Law of the City of Montclair," imposes a 6 percent tax[1] on the price of "an admission ticket for the privilege of admission to any event held." (§ 3-5.504.)

Events are defined as "motion pictures, theatrical performances, musical performances, operas, athletic contests, exhibitions of art or handicrafts or products, lectures, speeches, fairs, circuses, carnivals, menageries, or any other activity conducted for which an admission ticket is sold for the privilege of viewing such activity." (§ 3-5.503(2).)

Events conducted for the benefit of charitable purposes, and events conducted for the benefit of churches, schools, and religious, charitable, fraternal, educational, military, state, county or municipal organizations or associations are exempt for so long as no profit from the event accrues to any individual. (§ 3-5.529.)

The purpose of Ordinance No. 86-630 was declared to be "to raise revenue to assist in covering the cost of providing municipal services required by businesses covered under this article."

The plaintiffs own, operate, and/or serve as managing agents for two movie cinemas located in City. In addition to these cinemas, other businesses in City are potentially subject to the admissions tax: the Holiday Skating Rink, the Laff Stop, the Grand Prix Raceway, four nightclub/restaurants which charge cover charges, and two adult bookstores with viewing booths. At present, however, and as stipulated to by the parties, 90 percent of the admissions tax will be borne by the two movie theaters and the two adult bookstores.

Plaintiffs filed a complaint for declaratory and injunctive relief on the ground that the admissions tax impermissibly burdens their First Amendment rights. Plaintiffs also requested, and were granted, a temporary restraining order against the imposition of the tax, upon condition that they post a bond.

---

[1] Or the integrated sales tax rate applicable in San Bernardino County, whichever is greater.

Following a hearing on stipulated facts on plaintiffs' request for a preliminary injunction, the trial court determined that tax to be constitutional. The temporary restraining order was dissolved; whereupon judgment was entered in favor of defendants.

Plaintiffs have appealed and assert that Ordinance No. 86-630 impermissibly burdens constitutionally protected activities, without adequate justification, in violation of the rule set out in *Minneapolis Star* v. *Minnesota Comm'r of Rev.* (1983) 460 U.S. 575 [75 L.Ed.2d 295, 103 S.Ct. 1365]. After reviewing the authorities cited by both parties, we agree with plaintiffs that this tax does not pass constitutional muster and accordingly we must reverse the judgment.

## DISCUSSION

In *Minneapolis Star* v. *Minnesota Comm'r of Rev., supra,* 460 U.S. 575 [75 L.Ed.2d 295, 103 S.Ct. 1365] the Minneapolis Star and Tribune Company instituted an action in state court to seek refund of part of certain use taxes it had paid on the cost of ink and paper used to produce its newspaper. The challenged tax provided for a special use tax on the cost of ink and paper used to produce publications which were otherwise exempted from the state's general sales tax. The first $100,000 of such costs in any calendar year was exempted from the use tax. The practical result of this exemption was that (1) only a very small percentage of publishers paid any tax, and (2) the Minneapolis Sun by itself paid two-thirds of the total tax collected.

The Sun argued that the imposition of the tax violated respectively the First and Fourteenth Amendments' guaranties of freedom of the press and equal protection. The Supreme Court of Minnesota upheld the tax against this federal constitutional challenge, but the United States Supreme Court reversed, holding that the tax violated the First Amendment in two separate ways: (1) by singling out only the press for the special use tax and (2) by targeting, via the $100,000 exemption, only a few members of the press. (460 U.S. at pp. 591-592 [75 L.Ed.2d at pp. 308-309, 103 S.Ct. at p. 1375].)

The fact that there was no evidence that the State of Minnesota had intended to target a given publisher or to restrict free exercise of First Amendment rights was deemed irrelevant by the court. (460 U.S. at pp. 592-593 [75 L.Ed.2d at p. 309, 103 S.Ct. at p. 1376].) Instead, the relevant question was whether Minnesota could show that the discriminatory tax scheme was necessary to serve a compelling state interest which could not be achieved without differential taxation. (460 U.S. at pp. 582-585 [75 L.Ed.2d at pp. 303-305, 103 S.Ct. 1365 at pp. 1370-1372].) Moreover,

although the court concluded that Minnesota's interest in raising revenue was "critical," it held that such interest, standing alone, did not justify its special treatment of the press, when it could raise revenue by taxing businesses generally. (460 U.S. at p. 586 [75 L.Ed.2d at p. 305, 103 S.Ct. at p. 1372].)

The holding in *Minneapolis Star* has already been applied by California courts, where they have declared similarly discriminatory city ordinances to be unconstitutional.

In *City of Alameda* v. *Premier Communications Network, Inc.* (1984) 156 Cal.App.3d 148 [202 Cal.Rptr. 684], the City of Alameda had enacted an ordinance which imposed a business license tax of 3 percent of annual gross receipts on television subscription service businesses and emergency communications systems and alarms.

For failure to pay the tax the city filed suit against Premier Communications Network, Inc. (Premier) a multipoint distribution service engaged in the "pay T.V." business. Premier admitted nonpayment, denied liability on the ground that the tax violated the First Amendment, and cross-complained to enjoin enforcement of the ordinance. The trial court entered judgment declaring the ordinance unconstitutional and enjoining its enforcement. On appeal, the First District modified the judgment to declare that the ordinance was unconstitutional as it applied to Premier, and to enjoin its enforcement with respect to Premier only.

To reach this result, the reviewing court first reiterated the basic rule that Premier, "as a disseminator of motion pictures, news, and other information and entertainment programming, engages in conduct protected by the First Amendment guaranties of freedom of speech and press." (*Id.,* at p. 152, to the same effect, see *Schad* v. *Borough of Mount Ephraim* (1981) 452 U.S. 61, 65 [68 L.Ed.2d 671, 678, 101 S.Ct. 2176]: "Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee. [Citations.]".)

The court then considered the structure of the challenged ordinance, which imposed an annual business license tax on 87 types of businesses, using four methods: a flat fee, a per unit fee, a flat fee plus a sum based on the number of employees, and a fee tied to gross receipts. Only four businesses paid fees under the fourth method, i.e., tied to gross receipts: outdoor

advertisers, drive-in-theaters, television subscription service businesses, and emergency communications systems or alarms businesses.

Although businesses were subject to the imposition of one of these four methods, the ordinance also provided an *optional* method of taxation—an "in lieu" license fee based on gross receipts—to all but 10 types of businesses. All four businesses whose license fee were tied to gross receipts were excluded from electing to pay the "in lieu" fees, as were six other businesses; of those six, five paid fees subject to a ceiling, the highest ceiling being $600, and the sixth category of business, persons leasing hotels or office buildings, paid $4 per room. The "in lieu" tax schedule ranged from $.30 per $1,000 to $2.25 per $1,000 of gross receipts, compared to the $30 per $1,000 imposed on Premier.

The court then considered the *practical* result of the tax structure on Premier and concluded that Premier, with annual gross receipts of $210,000, was taxed more harshly than other businesses. More particularly, Premier's business license fee for one year would have been $6,300, whereas another category of business with the same receipts, under the highest level of the "in lieu" tax schedule, would have paid no more than $472.50 ($2.25 per $1,000, or less than one-thirteenth of the 3 percent tax rate imposed on Premier).

After determining that the ordinance created a differential tax burden, the court then reviewed the holding in *Minneapolis Star*; it then concluded, under the teachings of that case, that the business license tax on television subscription service businesses, as applied to Premier, failed to pass constitutional muster because it was differentially burdensome to the press, and because the only interest asserted by the city to justify the differential tax burden was the generation of revenue. The court concluded that this was not a sufficiently compelling interest to justify special treatment of the press.

More recently, in *Festival Enterprises, Inc.* v. *City of Pleasant Hill* (1986) 182 Cal.App.3d 960 [227 Cal.Rptr. 601], the First District was asked to invalidate an ordinance very similar to the ordinance under review here.

In *Festival Enterprises,* the City of Pleasant Hill had enacted a 5 percent tax on admission fees for events including, but not limited to: " '[b]asketball, softball, baseball, football, or wrestling exhibits, circuses, carnivals, or similar exhibits, ice or roller skating shows, museums, public hall, club room, assembly hall, theater, auditorium or concert hall where any type of entertainment, amusement, concert or performance is given or held, motion picture theaters, horse shows, rodeos, air shows, etc.' " (182 Cal.App.3d p. 962, fn. 1, quoting section 11.28.010 of the Pleasant Hill Municipal

Code.) The tax was enacted to provide revenue for needed street repairs and was one of three new taxes designed to fill this need.

Although the ordinance was broadly worded to apply to other forms of entertainment, the theaters owned by Festival Enterprises, Inc., were the *only* businesses which were affected by the tax.

Festival Enterprises, Inc., filed a complaint for declaratory and injunctive relief claiming that Pleasant Hill's admissions tax unconstitutionally interfered with protected free speech and that it violated the proscription of article XIII A, section 4 of the California Constitution (Prop. 13). The trial court found the tax to be an impermissible burden on free speech, in violation of the federal Constitution, and it declined to determine whether the tax also violated the state Constitution.

On appeal, relying on *Minneapolis Star* and its own earlier decision in *City of Alameda* the First District held that the tax, as applied to the theater owners, *did* violate the First and Fourteenth Amendments of the federal Constitution, for the following reasons:

(1) the theater owners were expected to bear the entire impact of the admissions tax, not only currently, but for the foreseeable future;

(2) the admissions tax was not a broadly based tax applicable to businesses in general, but was designed to apply only to amusement and entertainment businesses;

(3) the main interest in imposing the tax was to raise revenues; and

(4) the city did not contend that the operation of the theaters created an additional need for revenue because of increased use of city services. (182 Cal.App.3d at p. 964.)

The City of Pleasant Hills argued that the tax was valid because it imposed a uniform rate for *all* businesses that charged an admission fee. However, the court gave this argument short shrift, noting that the gravamen of a differential tax treatment upon protected activity is the *threat* that discriminatory taxes may be effectively used to censor unpopular expression. (182 Cal.App.3d at pp. 964-965.) Implicit in its statement was the idea, set forth in *Minneapolis Star,* that a tax which is facially neutral but which actually operates in a discriminatory manner, is not truly neutral or uniform.

This point was reemphasized by the United States Supreme Court in *Acara* v. *Cloud Books, Inc.* (1986) 478 U.S. 697 [92 L.Ed.2d 568, 106 S.Ct.

3172], in which the court characterized its earlier decision as follows: "In *Minneapolis Star* . . . we struck down a tax imposed on the sale of large quantities of newsprint and ink because the tax *had the effect* of singling out newspapers to shoulder its burden. We imposed a greater burden of justification on the State even though the tax was imposed upon a nonexpressive activity, *since the burden of the tax inevitably fell disproportionately—in fact, almost exclusively—upon the shoulders of newspapers exercising the constitutionally protected freedom of the press*." (478 U.S. at p. 704 [92 L.Ed.2d at p. 576, 106 S.Ct. at p. 3176] italics added.)

■ Here, just as in *Minneapolis Star* and *Festival Enterprises,* the tax in question appears to apply to a broad range of businesses, but in reality its burden falls disproportionately upon businesses engaged in protected speech: two theaters and two adult book stores with viewing booths. Although, unlike the case in *Festival Enterprises,* there are a few other businesses in Montclair which are actually affected by the ordinance, this difference alone cannot save the tax from the stigma of unconstitutionality. First, as in *Minneapolis Star,* a disproportionate amount of tax (90 percent) is paid by only a few businesses. Second, as plaintiffs here point out, even the other few businesses subject to the tax may avoid it—the roller rink by dropping its admission fee and by instead increasing its skate rental fee, and the nightclubs by dropping their admission fee and instead instituting a minimum drink or dinner charge—whereas plaintiffs, who are bound by distribution agreements, do not have such a readily available means to avoid an admissions tax. Third, at least some of the other businesses subject to the tax, e.g., the nightclub/restaurants, would also appear to be engaged in, or likely to engage in, protected speech, and the fact that they too are among the few businesses actually subject to the tax does not help defendants' position.

Defendants seek to avoid the holdings of *Minneapolis Star* and *Festival Enterprises* by citing *Regan* v. *Taxation With Representation of Wash.* (1983) 461 U.S. 540 [76 L.Ed.2d 129, 103 S.Ct. 1997], which held, in the context of an equal protection challenge, that the taxpayer bears the burden of demonstrating that a tax classification oppressively discriminates against a particular person or class, and *Times Mirror Co.* v. *City of Los Angeles* (1987) 192 Cal.App.3d 170 [237 Cal.Rptr. 346], which held that the government may subject the press to generally applicable economic regulations and taxes.

However, the holdings in those cases do not allow or require us to affirm the decision below, as plaintiffs' uncontradicted evidence demonstrates that the tax challenged here *does* discriminate against those engaged in protected

speech, and is not one of general applicability, as it is not targeted at all businesses. Indeed, despite its broadly worded applicability, the tax falls almost entirely upon only four businesses, *all* of which are engaged in protected speech. ■ As has been pointed out by the United States Supreme Court on numerous occasions, a statute challenged under the First Amendment "must be tested by its *operation and effect.*" (*Near* v. *Minnesota* (1931) 283 U.S. 697, 708 [75 L.Ed. 1357, 1363, 51 S.Ct. 625, 628], italics added, and see also *Schneider* v. *State* (1939) 308 U.S. 147, 161 [84 L.Ed. 155, 164-165, 60 S.Ct. 146, 151]; *Schad* v. *Mount Ephraim, supra,* 452 U.S. 61, 68 [68 L.Ed.2d 671, 679-680, 101 S.Ct. 2176, 2182].)

■ Therefore, based on the holding of *Minneapolis Star* and *Festival Enterprises, Inc.,* we hold that the tax in question is unconstitutional as applied to plaintiffs.

### DISPOSITION

The judgment is reversed, and the trial court is directed to enter judgment declaring Ordinance No. 86-630 unconstitutional as applied to plaintiffs and enjoining its enforcement with respect to them.

Campbell, P. J., and Dabney, J., concurred.

Respondents' petition for review by the Supreme Court was denied May 24, 1989.