[No. A030497. First Dist., Div. Five. June 26, 1986.]

FESTIVAL ENTERPRISES, INC., et al., Plaintiffs and Appellants, v. CITY OF PLEASANT HILL et al., Defendants and Appellants.

**COUNSEL**

Barry J. London, Benjamin Berk and Lillick, McHose & Charles for Plaintiffs and Appellants.

Dennis A. Lee, City Attorney, and Charles O. Triebel, Jr., for Defendants and Appellants.

James A. McKelvey, City Attorney (Fresno), and Denise M. Kerner, Deputy City Attorney, as Amici Curiae on behalf of Defendants and Appellants.

**OPINION**

**LOW, P. J.**—We hold that the city's "admissions tax," as applied to plaintiff theatre owners, imposes an impermissible burden on protected speech in violation of the free speech and equal protection clauses of the First and Fourteenth Amendments of the United States Constitution. We need not address contentions on the cross-appeal that this admissions tax was a "special tax" enacted in violation of article XIII A, section 4 of the California Constitution.

Plaintiffs are theatre owners who operate the only theatres in defendant City of Pleasant Hill. On September 26, 1983, the Pleasant Hill City Council adopted Ordinance No. 525, adding chapter 11.28 to the Pleasant Hill Municipal Code, which levies a 5 percent tax on the admission price of sporting events, movie theatres, concerts, shows, museums, performances, displays and exhibitions within the city.[1] This tax was enacted primarily to

---

[1]Chapter 11.28, section 11.28.010 of the Pleasant Hill Municipal Code reads in part: "A. ADMISSION FEE. 'Admission Fee' means any charge or renumeration made or received for the right or privilege to attend or be present at any show, performance, display or exhibition; and includes, but is not limited to the following: All charges for seats, chairs, tables, benches, space to stand or sit, and other similar accommodations, reserved or otherwise; and including, but not limited to the following type of events: Basketball, softball, baseball, football, or wrestling exhibits, circuses, carnivals or other similar exhibits, ice or roller skating shows, museums, public hall, club room, assembly hall, theatre, auditorium or concert hall where any type of entertainment, amusement, concert or performance is given or held, motion picture theatres, horse shows, rodeos, air shows, etc."

provide revenue for needed street repairs. In an April 5, 1983, memorandum to the city council, the city manager explained the need to raise approximately $335,000 for necessary street repairs. The tax scheme proposed, and later approved by the city council, included one tax increase and three new taxes. One of the new taxes was the admissions tax. The projected yield from the admissions tax for fiscal year 1983-1984 was $215,000. The figure was based solely on the estimated revenues from plaintiffs' movie theatres.

Although the ordinance is broadly worded to apply to other forms of entertainment, plaintiffs' theatres are the only businesses currently affected by the tax. It is conceded by defendants that from the date the admissions tax was first proposed, no one knew if there would be businesses other than plaintiffs' that would be subject to the tax. The parties agree that other businesses subject to the tax do not now exist in the city and it is not known when, if ever, such businesses will appear in the future.

Plaintiffs filed a complaint for declaratory and injunctive relief claiming that the admissions tax was an unconstitutional interference with protected free speech and that it was a special tax which was not enacted by the two-thirds vote required by article XIII A, section 4 of the California Constitution. The trial court issued preliminary and permanent injunctions and found the tax to be an impermissible burden on free speech in violation of the federal Constitution. The court declined to decide whether the tax also violated article I, section 2 of the California Constitution.

I

The showing of commercial motion pictures in plaintiffs' movie theatres is protected by the free speech and free press guaranties of the First and Fourteenth Amendments. (*Joseph Burstyn, Inc.* v. *Wilson* (1952) 343 U.S. 495, 502 [96 L.Ed. 1098, 1106, 72 S.Ct. 777]; *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 689 [68 Cal.Rptr. 721, 441 P.2d 281].) Governments can impose taxes on businesses engaged in protected activities as part of a general taxation scheme without reaping constitutional problems. (*Minneapolis Star* v. *Minnesota Comm'r of Rev.* (1983) 460 U.S. 575, 581 [75 L.Ed.2d 295, 302, 103 S.Ct. 1365].) The power to create classifications for taxation purposes is a broad one, within the discretion of the Legislature, and is subject only to limitations of the state and federal Constitutions. (*Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136, 142 [222 P.2d 879].) There is nothing unconstitutional about treating plaintiffs' theatres as a separate class for tax treatment so long as "the purpose of imposing taxes is founded on natural, intrinsic or fundamental distinctions which are rea-

sonable in their relation to the object of the legislation . . . ." (*Ibid.*; also *City of Berkeley* v. *Oakland Raiders* (1983) 143 Cal.App.3d 636, 639-640 [192 Cal.Rptr. 66].)

However, special deference must be paid to businesses engaged in protected speech, and such activities may not be singled out for discriminatory tax treatment, unless the state asserts a counterbalancing interest of compelling importance that it cannot achieve without differential taxation. (*Minneapolis Star* v. *Minnesota Comm'r of Rev.*, *supra*, 460 U.S. at p. 585 [75 L.Ed.2d at p. 304]; *City of Alameda* v. *Premier Communications Network, Inc.* (1984) 156 Cal.App.3d 148, 153 [202 Cal.Rptr. 684].)

■ Plaintiffs were expected to bear the entire impact of the admissions tax, not only currently but for the foreseeable future. The admissions tax was not a broadly based tax applicable to businesses in general, but was additional to the basic business license tax. It was designed only to apply to amusement and entertainment businesses in the city, of which plaintiffs' theatres were the only taxable entities. The main interest asserted by the city, and reflected in the city council minutes, was the raising of revenue. While this interest is critical to the operation of any government, "[s]tanding alone, however, it cannot justify the special treatment of the press, for an alternative means of achieving the same interest without raising concerns under the First Amendment is clearly available: the [city] could raise the revenue by taxing businesses generally, avoiding the censorial threat implicit in a tax that singles out the press." (*Minneapolis Star* v. *Minnesota Comm'r of Rev.*, *supra*, 460 U.S. at p. 586 [75 L.Ed.2d at p. 305], fn. omitted; *City of Alameda* v. *Premier Communications Network, Inc.*, *supra*, 156 Cal.App.3d at p. 156.)

The city has shown no particular justification for this tax other than for general revenue purposes; i.e., that these funds would most likely be used for street repairs or to balance the city's budget for the fiscal year 1983-1984. (Cf. *Fox etc. Corp.* v. *City of Bakersfield*, *supra*, 36 Cal.2d at p. 138.) There is no contention that the additional revenue is needed because of the increased use of city services required by virtue of the operation of plaintiffs' theatres, i.e., police protection, street repair or sanitation collection. We conclude that the admissions tax was not necessary to achieve the goal of raising revenue and we agree with the trial court that it presents an impermissible differential burden on plaintiffs' businesses in violation of the First Amendment.

## II

■ Defendants argue that the tax is valid since it imposes a uniform rate for all businesses that charge an admission fee. This contention does

not address the constitutional concerns. The gravamen of a differential tax treatment upon protected activity is the threat that discriminatory taxes may be effectively used to censor unpopular expression. (*Minneapolis Star* v. *Minnesota Comm'r of Rev., supra,* 460 U.S. at p. 585 [75 L.Ed.2d at p. 304].) The fact that a tax *rate* is uniform does not somehow make it less burdensome on the protected activity. The effect of the tax on other entertainment and amusement businesses is illusory and we must direct our attention to the impact on plaintiffs' theatres alone.

### III

Relying on *Minneapolis Star,* defendants assert that a tax is unconstitutional only if it is facially discriminatory. That reliance is misplaced. *Minneapolis Star* simply held on the particular facts of that case, that Minnesota's "use tax" on ink and paper was facially discriminatory against publications. (460 U.S. at p. 581 [75 L.Ed.2d at p. 302].) The court did not hold that the tax must, by its terms, expressly single out plaintiff's protected activity to be held unconstitutional. To the contrary, the Supreme Court reasoned that the issue of differential treatment "invites us to look beyond the form of the tax to its substance." (At p. 586 [75 L.Ed.2d at p. 305].)

Any law which is nondiscriminatory on its face may be applied in such a way as to be unconstitutional. (*Furman* v. *Georgia* (1972) 408 U.S. 238, 256-257 [33 L.Ed.2d 346, 359-360, 92 S.Ct. 2726]; *People* v. *Wingo* (1975) 14 Cal.3d 169, 180-181 [121 Cal.Rptr. 97, 534 P.2d 1001].) Specifically, when passing on the constitutionality of state taxing schemes, the courts are always concerned with "the practical operation of the tax, that is, substance rather than form. [Citations.]" (*American Oil Co.* v. *Neill* (1965) 380 U.S. 451, 455 [14 L.Ed.2d 1, 5, 85 S.Ct. 1130].) Even if the admissions tax, as written, could otherwise pass constitutional muster, the impact of the tax on plaintiffs' theatres is discriminatory and violates the equal protection clause.

Defendants argue that since there is a future possibility that other businesses subject to the tax will begin operations in Pleasant Hill, the tax is not discriminating against plaintiffs. In analyzing the constitutionality of the tax, we cannot ignore the present unfairness and rely only upon a hypothetical situation that *might* save the tax scheme in the future. There is no indication that these other businesses are contemplated or that they will be established at all. We cannot ignore the minutes of the city council meeting which indicate that only plaintiffs' theatres were relied upon to pay the tax and that the council members had no other businesses in mind when

it passed the ordinance. The impact of the admissions tax on plaintiffs is just as burdensome as if the statute's language expressly singled out plaintiffs' theatres for special tax treatment. There is sufficient evidence to support the trial court's finding that the admissions tax subjected plaintiffs to an unequal and impermissible tax burden.

Affirmed.

King, J., and Haning, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied September 25, 1986. Broussard, J., and Reynoso, J., were of the opinion that the petition should be granted.