[No. 56367–5.   En Banc.   January 18, 1990.]

ROGER FORBES, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*

*Jack R. Burns,* for appellant.

*Douglas N. Jewett, City Attorney,* and *Jorgen G. Bader, Assistant,* for respondent.

DURHAM, J.—The present case tests the constitutionality of a Seattle municipal ordinance which levies an admission tax upon patrons of motion picture theaters, and exempts patrons of nonprofit, tax–exempt organizations from the tax. The trial court held the ordinance to be constitutional in all respects. We affirm.

The Seattle municipal ordinance at issue here was originally adopted March 31, 1943 and, as amended from time to time, has been in effect ever since. Seattle Municipal

Code (SMC) 5.40. The ordinance, as authorized by RCW 35.21.280, levies an admission tax upon everyone who pays an admission charge. The admission tax is imposed at the rate of 5 percent of the admission charge.[1] SMC 5.40-.020(B). Although the admission tax applies to a wide range of events for which an admission charge is required, SMC 5.40.010(A)(1)–(6), there are several categories of exemptions from the admission tax. See SMC 5.40.025–.028.

In the present case, Roger Forbes challenges the constitutionality of the ordinance. Forbes operates the Embassy and Midtown theaters in Seattle. Both the Embassy and the Midtown theaters exhibit feature length video tape motion picture films. Under the ordinance, patrons of Forbes' theaters are not exempt from the admission tax, and he has collected the admission tax accordingly.[2]

On August 31, 1988, Forbes filed a civil action in King County Superior Court seeking a declaration that the admission tax violated rights guaranteed to his patrons by the first amendment to the United States Constitution and article 1, section 5 of the Washington State Constitution.[3] In addition, he alleged that exempting patrons attending artistic and cultural activities[4] of a college or university

---

[1]Under the ordinance, the person receiving payment for an admission charge is responsible for collecting and remitting the admission tax to the City. SMC 5.40.070.

[2]Movie tickets at the Embassy and Midtown theaters are $6 and the admission tax at 5 percent due from each patron is approximately 29 cents for each ticket.

[3]Appellant also sought a preliminary and permanent injunction to prohibit the City from acting pursuant to SMC 5.40 as well as a money judgment refunding all admission taxes heretofore paid to the City.

[4]The exemption applies to "an opera, concert, dance recital or like musical entertainment, a play, puppet show or dramatic reading, an exhibition of painting, sculpture, or artistic or historical objects or to a museum, historic vessel or science center". SMC 5.40.026(A)(1).

and nonprofit, tax–exempt organizations, which meet certain requirements,[5] from the admission tax violates the equal protection guaranties of the fourteenth amendment to the United States Constitution and article 1, section 12 of the Washington State Constitution. The City filed a counterclaim against Forbes alleging that although he has collected admission taxes from persons paying an admission charge to the Midtown and Embassy theaters, he has failed to remit those funds to the Director of Licenses and Consumer Affairs since October 1987.

The City subsequently moved for partial summary judgment and Forbes moved for summary judgment. On November 7, 1988, after considering the materials presented by the parties, and finding no genuine issue of material fact as to SMC 5.40 and the City's administration of its admission taxes, King County Superior Court Judge Charles V. Johnson granted partial summary judgment[6] in favor of the City of Seattle, finding the ordinance constitutional in all respects. On November 10, 1988, Forbes timely filed notice of appeal of the trial court's judgment to the Court of Appeals. We accepted certification.

We are asked to decide if SMC 5.40 abridges the guaranties of free speech or equal protection of the state and federal constitutions. Forbes' two constitutional challenges are addressed separately.

We first address Forbes' free speech challenges. He argues that SMC 5.40.020, as applied to patrons of his theaters, constitutes a prior restraint. In addition, Forbes contends that the admission tax is a discriminatory tax which violates the first amendment to the United States Constitution and article 1, section 5 of the Washington State Constitution. These claims are addressed seriatim.

---

[5]*See* SMC 5.40.026(A)(1) and SMC 5.40.026(B)(1), (2).

[6]The court reserved for later adjudication the City's counterclaim against Roger Forbes for an accounting for admission taxes, which were collected from patrons, and for judgment for such taxes.

■ When a party alleges a violation of rights protected under both the state and federal constitutions, we first interpret and apply the Washington State Constitution. *Seattle v. Mesiani,* 110 Wn.2d 454, 456, 755 P.2d 775 (1988); *O'Day v. King Cy.,* 109 Wn.2d 796, 801–02, 749 P.2d 142 (1988). However, whenever a claim of right is made under the Washington Constitution, we must first decide if the asserted right is more broadly protected under the state constitution than it is under federal constitutional law. *Bedford v. Sugarman,* 112 Wn.2d 500, 507, 772 P.2d 486 (1989). In *State v. Gunwall,* 106 Wn.2d 54, 61–62, 720 P.2d 808 (1986), we enumerated several nonexclusive neutral criteria which must be met before this court considers state constitutional analysis. As a matter of policy, examination of the *Gunwall* criteria is essential in order for the process of state constitutional analysis to be "articulable, reasonable and reasoned.'" *Bedford v. Sugarman, supra* at 507 (quoting *State v. Gunwall, supra* at 63). Because Forbes has failed to discuss the minimum criteria mentioned in *Gunwall,* we decline to undertake a separate analysis of Const. art. 1, § 5 at this time. *State v. Carver,* 113 Wn.2d 591, 598–99, 781 P.2d 1308 (1989); *State v. Long,* 113 Wn.2d 266, 271, 778 P.2d 1027 (1989); *State v. Jones,* 112 Wn.2d 488, 498, 772 P.2d 496 (1989); *State v. Worrell,* 111 Wn.2d 537, 539 n.1, 761 P.2d 56 (1988); *State v. Wethered,* 110 Wn.2d 466, 472, 755 P.2d 797 (1988). Accordingly, Forbes' free speech claims will be decided under federal constitutional law.

## PRIOR RESTRAINT

Forbes maintains that SMC 5.40.020 constitutes a prior restraint because it imposes a governmental charge (admission tax) upon patrons who pay an admission charge to for-profit motion picture theaters.[7] He cites *State v. Coe,* 101 Wn.2d 364, 679 P.2d 353 (1984), to define the type of governmental action that constitutes a prior restraint. In *State*

---

[7]Forbes does not argue that he, as operator of the two theaters, is burdened by a prior restraint.

*v. Coe, supra,* we explained that prior restraints are "'official restrictions imposed upon speech or other forms of expression in advance of actual publication.'" *Coe,* at 372 (quoting *Seattle v. Bittner,* 81 Wn.2d 747, 756, 505 P.2d 126 (1973)). Forbes argues that the admission tax acts as a prior restraint because it imposes a condition upon the exercise of the constitutionally guaranteed right to view motion pictures. In addition, he maintains that the admission tax chills protected speech by deterring potential recipients.

■ The rudimentary question underlying Forbes' prior restraint claim is whether the limitation imposed by the admission tax constitutes an unconstitutional prior restraint. We begin our analysis by noting that governmental action which amounts to an unconstitutional prior restraint usually has two distinguishing features. First, the governmental decision to restrain the speech is based on the content of the speech. Second, the speech is restrained in advance of publication. In the present case, however, these characteristics are absent. The admission tax is content neutral; *i.e.,* the tax does not vary according to the type of speech involved. Moreover, the admission tax does not restrain, in advance, the exhibition of any motion picture. Thus, Forbes' argument that SMC 5.40.020 is a presumptively unconstitutional prior restraint is not well founded.

■ The limitation imposed upon Forbes' patrons by the challenged tax does not constitute a prior restraint. The admission tax is not "imposed upon speech", rather, it is imposed upon an admission charge. Consequently, the tax does not satisfy the *State v. Coe, supra,* definition of a prior restraint ("official restrictions imposed upon speech"). In other words, viewing a motion picture does not trigger the tax; rather, payment of an admission charge to a nonexempt event triggers the tax.

Moreover, not all limitations on protected speech constitute prior restraints. In the present case, the limitation is distinguishable from a prior restraint. In *Arcara v. Cloud*

*Books, Inc.,* 478 U.S. 697, 92 L. Ed. 2d 568, 106 S. Ct. 3172 (1986), the Supreme Court distinguished a closure order (against a bookstore) from a prior restraint by noting two significant differences between ordinary limitations and those limitations which constitute prior restraints:

> First, the order would impose no restraint at all on the dissemination of particular materials, since respondents are free to carry on their bookselling business at another location, even if such locations are difficult to find. Second, the closure order sought would not be imposed on the basis of an advance determination that the distribution of particular materials is prohibited—indeed, the imposition of the closure order has nothing to do with any expressive conduct at all.

*Arcara,* at 705 n.2. *See also Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984) ("an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny"). Similarly, the challenged ordinance here does not prohibit patrons of Forbes' theaters from viewing the motion pictures. Moreover, the admission tax does not depend on the content of a particular motion picture.

Finally, Forbes' claim that the admission tax chills recipients of protected speech is illusory. The record is devoid of any evidence that patrons of his theaters have in fact been deterred from viewing a film because of the admission tax.

In summary, a prior restraint is not a limitless label that attaches to any governmental action which impacts, no matter how indirectly or tangentially, First Amendment rights. A prior restraint occurs when the government engages in censorship; *i.e.,* when there is an official restriction imposed upon speech in advance of publication. Although SMC 5.40.020 places a limitation upon the ability of taxpayers to attend events where there is an admission charge, the admission tax does not constitute a prior restraint.

## DISCRIMINATORY TAX

Forbes next argues that the challenged ordinance is a discriminatory tax that impermissibly infringes First Amendment guaranties of free speech.

■ Although it is well established that First Amendment activities may constitutionally be subject to genuinely nondiscriminatory taxation,[8] *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 229, 95 L. Ed. 2d 209, 107 S. Ct. 1722 (1987); *Grosjean v. American Press Co.,* 297 U.S. 233, 250, 80 L. Ed. 660, 56 S. Ct. 444 (1936), the Supreme Court has recognized two forms of differential taxation which so burden the interests protected by the First Amendment that such treatment is impermissible unless the government demonstrates a counterbalancing interest of compelling importance that it cannot achieve without differential taxation. *Arkansas Writers' Project,* at 231; *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Rev.,* 460 U.S. 575, 585, 75 L. Ed. 2d 295, 103 S. Ct. 1365 (1983). The first situation is where the government singles out First Amendment activities as a whole for taxation. The second situation occurs where the government targets a subgroup of First Amendment activities (here, motion picture theaters) for taxation. *Arkansas Writers' Project,* at 228; *Minneapolis Star,* at 591. In this case, we are concerned only with the latter of these.

Whether the Seattle admission tax discriminatorily impacts motion picture theaters is a question of fact.

---

[8]In *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Rev.,* 460 U.S. 575, 75 L. Ed. 2d 295, 103 S. Ct. 1365 (1983), the Supreme Court explained the rationale for its approval of nondiscriminatory taxation by stating:

A power to tax differentially, as opposed to a power to tax generally, gives a government a powerful weapon against the taxpayer selected. When the State imposes a generally applicable tax, there is little cause for concern. We need not fear that a government will destroy a selected group of taxpayers by burdensome taxation if it must impose the same burden on the rest of its constituency.

*Minneapolis Star,* at 585.

Forbes maintains that the admission tax has a dispropor-
tionate impact upon movie theaters. He argues that the tax
is discriminatory because "[m]ovie theaters alone pay in
excess of 20% of the admission taxes generated." Reply
Brief of Appellant, at 3. This misstates the situation. Movie
theaters do not pay any of the admission taxes; patrons of
movie theaters pay the admission tax. SMC 5.40.020. Thus,
the proper inquiry is whether the admission tax has a dis-
criminatory impact upon patrons of movie theaters, and
Forbes has not offered any evidence which demonstrates
that.

Moreover, the record indicates that the Seattle admission
tax has broad application. The tax applies to any nonex-
empt event where there is an admission charge. Admission
charges for both protected First Amendment activities and
other activities are subject to the tax. The general applica-
bility of the admission tax is confirmed by the fact that
Forbes has not pointed to any paid admissions (excluding
those which may be statutorily exempted) which are not
taxed. In addition, the Seattle admission tax has much
broader application than the taxes which were struck down
in *Arkansas Writers' Project, Minneapolis Star,* and *Gros-
jean.* In each of those cases, the tax impacted *only* First
Amendment activities.

Forbes, however, cites *Festival Enters., Inc. v. Pleasant
Hill,* 182 Cal. App. 3d 960, 227 Cal. Rptr. 601 (1986) and
*United Artists Communications, Inc. v. Montclair,* ___ Cal.
App. 3d ___, 257 Cal. Rptr. 124, *cert. denied,* 110 S. Ct. 280
(1989), as examples of admission tax ordinances "indistin-
guishable" from the present case, which were held to be
unconstitutional, in part because they were not generally
applicable taxes. These cases, however, are not instructive.
The facts of both *Festival Enters.* and *United Artists* are
substantially different from the present case.

In *Festival Enters.,* the admission tax ordinance,
although broadly worded to apply to other forms of enter-
tainment, affected *only* the plaintiff's theaters. *Festival
Enters.,* 182 Cal. App. 3d at 963. Moreover, the plaintiffs in

*Festival Enters.* were forced to bear the entire impact of the admissions tax not only at the time of enactment, but for the foreseeable future.[9] *Festival Enters.,* 182 Cal. App. 3d at 964.

In *United Artists,* the admission tax ordinance, although neutral on its face, in reality disproportionately taxed certain admissions. In fact, *90 percent* of the admissions tax was borne by four businesses, all of which were engaged in protected speech.[10] *United Artists,* 257 Cal. Rptr. at 128.

Thus, in both *Festival Enters.* and *United Artists,* just as in *Minneapolis Star,* the tax in question appeared to apply to a broad range of businesses, but in reality its burden fell disproportionately upon one to four businesses. By comparison, Seattle's admission tax treats for–profit theaters the same as any other business which charges its patrons an admission charge. In fact, the record indicates that Seattle has several hundred admission tax accounts, but only approximately two dozen movie theater accounts. Revenues raised from the tax on admissions to movie theaters supply only one–fifth of the admission tax revenues. Thus, we conclude that the City is not singling out patrons of movie theaters for taxation. Unlike the admission tax in *Festival Enters.* and *United Artists,* the Seattle admission tax does not fall disproportionately upon persons engaged in protected speech activities.

Because we have determined that the admission tax does not discriminatorily impact First Amendment activities, it is not necessary to consider whether there is a compelling state interest for the tax.

In summary, the Seattle admission tax is a content–neutral tax that does not single out those engaged in First

---

[9]The court stated, "We cannot ignore the minutes of the city council meeting which indicate that only plaintiffs' theatres were relied upon to pay the tax and that the council members had no other businesses in mind when it passed the ordinance." *Festival Enters.,* 182 Cal. App. 3d at 965–66.

[10]The four businesses included two movie theaters and two adult bookstores with viewing booths.

Amendment activities for taxation. The tax is neither special nor unique and is generally applicable to all persons who pay admissions. In no way does the tax resemble a penalty directed at a few protected speech activities. We conclude that SMC 5.40.020 does not constitute a prior restraint or constitute discriminatory taxation of First Amendment activities.

## EQUAL PROTECTION

We are next asked to decide if the admission tax exemption, found in SMC 5.40.026, for patrons paying an admission charge to artistic or cultural activities of a college or university and nonprofit tax–exempt organizations denies equal protection to patrons of for–profit motion picture theaters who are required to pay the admission tax. We conclude that there is no constitutional deprivation.

Although Forbes contends that the admission tax exemption violates the equal protection guaranties of both the state and federal constitutions, he has failed to discuss the *Gunwall* criteria, which is a condition precedent to our examination of whether the state constitution affords greater protection than the federal constitution. See discussion, *supra.* Consequently, we decline to address the state constitutional claim. However, we do reach the federal claim and follow federal equal protection analysis.

We begin by identifying the appropriate standard of judicial scrutiny. *Financial Pac. Leasing, Inc. v. Tacoma,* 113 Wn.2d 143, 147, 776 P.2d 136 (1989); *Convention Ctr. Coalition v. Seattle,* 107 Wn.2d 370, 378, 730 P.2d 636 (1986); *Paulson v. County of Pierce,* 99 Wn.2d 645, 652, 664 P.2d 1202, *appeal dismissed,* 464 U.S. 957 (1983). Under equal protection analysis, governmental action which either burdens a fundamental right or employs a suspect classification[11] is subject to strict scrutiny. *Nielsen v.*

---

[11]"Fundamental rights" are those "explicitly or implicitly guaranteed by the Constitution", *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 33–34, 36 L. Ed. 2d 16, 93 S. Ct. 1278 (1973), while examples of "suspect classifications"

*Washington State Bar Ass'n,* 90 Wn.2d 818, 820, 585 P.2d 1191 (1978). On the other hand, statutes and ordinances which do not burden fundamental rights nor employ suspect classifications are generally subject to minimum scrutiny and will be upheld unless they rest on grounds wholly irrelevant to the achievement of a legitimate government objective.[12] *Financial Pac. Leasing, Inc.,* 113 Wn.2d at 147; *Petersen v. State,* 100 Wn.2d 421, 444, 671 P.2d 230 (1983); *Paulson v. County of Pierce,* 99 Wn.2d at 652. In the case before us, we are not presented with an ordinance which employs a suspect classification. Accordingly, unless the classification used to distinguish which patrons are exempt from the admission tax unduly burdens a fundamental right, the ordinance will be subject to minimum scrutiny.

■■ Forbes maintains that the admission tax exemption does burden a fundamental right. He argues that because the exhibition of motion pictures is a form of expression protected by the First Amendment, any governmental burden on the exhibition of motion pictures, such as requiring patrons to pay an admission tax, is subject to strict scrutiny. This reasoning, however, misses the mark. The question is not whether the imposition of the admission tax on Forbes' patrons burdens the First Amendment; rather, the question is whether the classification used to determine which individuals are exempt from the tax

---

include those based on race, nationality, or alienage. *State v. Schaaf,* 109 Wn.2d 1, 18, 743 P.2d 240 (1987).

[12]When a classification is subject to minimum scrutiny, the party challenging the classification has the heavy burden of overcoming the presumption of its constitutionality. *Convention Ctr. Coalition v. Seattle,* 107 Wn.2d at 378; *Bellevue Sch. Dist. 405 v. Brazier Constr. Co.,* 100 Wn.2d 776, 782, 675 P.2d 232, *adhered to on rehearing,* 103 Wn.2d 111, 691 P.2d 178 (1984). Furthermore, under minimum scrutiny, an ordinance generally will not be declared to be unconstitutional unless it appears unconstitutional beyond a reasonable doubt. *Haberman v. WPPSS,* 109 Wn.2d 107, 139, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed,* 109 S. Ct. 35 (1988); *State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971).

unduly burdens the First Amendment and therefore violates the equal protection clause.[13] We conclude that the distinction between patrons of for–profit motion picture theaters and patrons of nonprofit, tax–exempt theaters does not unduly burden the First Amendment.

The classification between the two groups of patrons does not depend upon whether a patron attends an event at an organization which engages in free speech activities; rather, exemption from the tax depends solely upon whether a patron attends an event at an organization which meets specifically enumerated criteria. *See* SMC 5.40.026, 5.40.085.[14] Moreover, unlike the cases which have found an equal protection violation based upon an ordinance unduly burdening the First Amendment,[15] the classification in the present case does not hinge on the content of the speech the motion picture theater chooses to exhibit; rather, the classification is simply between patrons of for–profit theaters and patrons of nonprofit, tax–exempt theaters. In other words, the ordinance does not classify individuals based on the exercise of their First Amendment rights.

Given the foregoing analysis, SMC 5.40.026 must satisfy only minimum scrutiny to pass constitutional muster. Minimum scrutiny consists of a 3–step analysis which

---

[13]Forbes appears to collapse his substantive First Amendment claim and his equal protection claim together. Such analysis is not instructive. Forbes' First Amendment claim is addressed *supra.* Here we consider the equal protection challenge, which looks to whether the government has made an improper classification. If a classification scheme is proper, the issue of which class a particular individual belongs in is not an equal protection matter. The equal protection clause *itself* applies only to the making of the classifications, not to the adjudication of the individual situations. J. Nowak, R. Rotunda & N. Young, *Constitutional Law* § 14.2 (3d ed. 1986). Simply stated, the equal protection clause guarantees that people who are similarly situated will be treated similarly.

[14]The admission tax exemption in question applies generally to nonprofit, tax–exempt organizations which, among other activities, also exhibit motion pictures. The exemption is not limited in any way to organizations which engage only in free speech activities.

[15]*See Carey v. Brown,* 447 U.S. 455, 65 L. Ed. 2d 263, 100 S. Ct. 2286 (1980); *Police Dep't v. Mosley,* 408 U.S. 92, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972).

considers: (1) does the legislation apply alike to all persons within a designated class; (2) are there reasonable grounds to distinguish between those who fall within the class and those who do not, and (3) does the classification have a rational relationship to the purpose of the legislation. *Financial Pac. Leasing, Inc. v. Tacoma,* 113 Wn.2d 143, 147, 776 P.2d 136 (1989); *O'Day v. King Cy.,* 109 Wn.2d 796, 814, 749 P.2d 142 (1988); *Haberman v. WPPSS,* 109 Wn.2d 107, 139, 744 P.2d 1032, 750 P.2d 254 (1987); *United Parcel Serv., Inc. v. Department of Rev.,* 102 Wn.2d 355, 367, 687 P.2d 186 (1984); *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 835–36, 601 P.2d 936 (1979), *appeal dismissed,* 446 U.S. 979 (1980).

Under minimum scrutiny, Forbes must first establish that the ordinance treats two similarly situated classes of people unequally. *Jones v. Helms,* 452 U.S. 412, 423, 69 L. Ed. 2d 118, 101 S. Ct. 2434 (1981). Where persons of different classes are treated differently, there is no equal protection violation. *Financial Pac. Leasing, Inc. v. Tacoma, supra* at 147. Only where members of the same class are treated dissimilarly may a person proceed with an equal protection claim.

Because patrons attending for–profit motion picture theaters and patrons attending nonprofit, tax–exempt organizations are two distinct classes, and the admission tax exemption applies equally to all members of the class it designates, there is no unequal treatment of members of the same class. *Convention Ctr. Coalition v. Seattle,* 107 Wn.2d 370, 379, 730 P.2d 636 (1986). Every patron who pays an admission charge to an event of a nonprofit, tax–exempt organization is exempt from the Seattle admission charge.

Second, under minimum scrutiny, Forbes must demonstrate that there is no reasonable basis for the classification between the two groups. *United Parcel Serv., Inc. v. Department of Rev., supra* at 369. It is not our function to consider the propriety of the tax exemption, or to criticize the public policy which may have prompted adoption

of the ordinance. *State ex rel. Namer Inv. Corp. v. Williams,* 73 Wn.2d 1, 7, 435 P.2d 975 (1968). So long as the "classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'" *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 527, 3 L. Ed. 2d 480, 79 S. Ct. 437 (1959) (quoting *Brown–Forman Co. v. Kentucky,* 217 U.S. 563, 573, 54 L. Ed. 883, 30 S. Ct. 578 (1909)); *State v. Hi–Lo Foods, Inc.,* 62 Wn.2d 534, 540, 383 P.2d 910 (1963), *appeal dismissed sub nom. Tacoma Ass'n of Credit Men v. State,* 377 U.S. 532, 12 L. Ed. 2d 734, 84 S. Ct. 1642 (1964). In addition, when a classification is challenged, facts are presumed sufficient to justify the classification. *Brewer v. Copeland,* 86 Wn.2d 58, 61, 542 P.2d 445 (1975).

It is well established that legislative bodies[16] have very broad discretion in establishing classifications for economic and social legislation. *Sonitrol Northwest, Inc. v. Seattle,* 84 Wn.2d 588, 590, 528 P.2d 474 (1974). Furthermore, a legislative body has even broader discretion and greater power in making classifications for purposes of taxation. *United Parcel Serv., Inc. v. Department of Rev., supra* at 368.[17] For example, in *Black v. State,* 67 Wn.2d

---

[16]For purposes of reviewing equal protection challenges, a city council has the same powers of classification as the Legislature. *Austin v. Seattle,* 176 Wash. 654, 657, 30 P.2d 646, 93 A.L.R. 203 (1934).

[17]*See also Sonitrol Northwest, Inc. v. Seattle,* 84 Wn.2d at 591; *Commonwealth Title Ins. Co. v. Tacoma,* 81 Wn.2d 391, 395, 502 P.2d 1024 (1972) ("[T]he legislative power is particularly broad in the area of taxation. It is inherent in the exercise of the power to tax that a state be free to select the objects or subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation."); *Oil Heat Inst. v. Mukilteo,* 81 Wn.2d 7, 11, 498 P.2d 864 (1972); *Boeing Co. v. State,* 74 Wn.2d 82, 86, 442 P.2d 970 (1968); *Hemphill v. Tax Comm'n,* 65 Wn.2d 889, 400 P.2d 297 (1965), *appeal dismissed,* 383 U.S. 103 (1966); *Bates v. McLeod,* 11 Wn.2d 648, 654–55, 120 P.2d 472 (1941) ("In the matter of classifying the subjects of taxation, the legislature has a very wide discretion. . . . the question of what persons shall constitute the class is one primarily for the legislature to determine, and its determination cannot be interfered with by the courts unless clearly arbitrary and without any reasonable basis.").

97, 406 P.2d 761 (1965), this court held that there was a sufficient difference between a floating hotel and a hotel constructed on land to justify the levying of an excise tax upon the leasing of one and exempting the other from the tax. In *Hemphill v. Tax Comm'n*, 65 Wn.2d 889, 400 P.2d 297 (1965), *appeal dismissed*, 383 U.S. 103 (1966), the court upheld a sales tax which was imposed on admission fees of amusement and recreation activities such as golf, ski lifts, skating, and billiards, but which exempted bowling. In *Boeing Co. v. State*, 74 Wn.2d 82, 442 P.2d 970 (1968), the court upheld a use tax imposed on bailments of personalty not involving consideration, even though leases of personalty were not taxed. The basis of the subject classification was simply the fact that lessees paid for the use of the personalty while bailees did not.

In the present case, the record indicates several reasonable grounds to distinguish between patrons paying an admission charge to a for–profit motion picture theater and patrons paying an admission charge to a nonprofit, tax–exempt organization exhibiting artistic performances.[18]

---

[18]Diann Shope, former legislative assistant to City Council member Phyllis Lamphere, stated in her affidavit several reasons for the exemption:

"[First,] [a]n arts organization sponsoring an event exempt from admission taxes sets its ticket prices at a rate affordable to the general public—far below the break–even price, let alone a price that will make a profit. Some tickets are kept even lower to encourage new audiences, and make it possible for students and senior citizens to attend. Adding an admission tax would either dissuade potential ticket buyers, or if the organization absorbed the tax, require them to raise more contributed income.

"[Second, the exemption] sets an example that may assist the sponsoring organization in securing private donations and volunteers. . . .

"[Third, the exemption] . . . serves to stimulate contributions from the private sector for artistic and cultural events. . . .

"[Finally,] Arts organizations with their own financial income and resources have less need for public funds through service contracts. If artistic or cultural events of nonprofit tax–exempt organizations were taxed, the Arts Commission and the art community would be pressing the City for a substantially larger appropriation to maintain the quality of artistic and cultural activities in the City. If the exemption of artistic and cultural events from the admission tax were to end, there would be a profound negative impact upon art and cultural activities in Seattle." Clerk's Papers, at 46–47.

Nonprofit, tax–exempt organizations are in a functionally separate class from for–profit motion picture theaters. In any event, there is no doubt that a distinction does exist, and Forbes has made no showing that the distinction is arbitrary or capricious. Consequently, he has not satisfied his burden of demonstrating that there is no reasonable basis for the admission tax exemption.

Third, under minimum scrutiny, Forbes must demonstrate that there is no rational relationship between the classification and the purpose of the ordinance. *United Parcel Serv., Inc. v. Department of Rev., supra* at 369. The test for reviewing the classification is merely whether "any state of facts reasonably can be conceived that would sustain [the classification]." *Allied Stores of Ohio, Inc. v. Bowers, supra* at 528. Accordingly, Forbes must do more than merely question the wisdom and expediency of the ordinance. *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs,* 92 Wn.2d 831, 836, 601 P.2d 936 (1979), *appeal dismissed,* 446 U.S. 979 (1980). He must show conclusively that the classification is contrary to the purpose of the ordinance. *Yakima Cy. Deputy Sheriff's Ass'n,* at 836.

Forbes argues that there is no correlation between the admission tax exemption for patrons of nonprofit, tax–exempt organizations and the articulated purpose of the ordinance, which is to "reduce the amount that the City would need to appropriate from the City's General Fund for maintenance and development of these activities." Shope Affidavit, Clerk's Papers, at 43. Even assuming that there is no correlation, this argument does not conclusively demonstrate that the classification is contrary to the purpose of the tax exemption.[19] Although the admission tax exemption may not precisely satisfy the stated purpose of

---

[19]The record reveals that the City established the admission tax exemption in question as part of an overall program to further artistic and cultural activities. The City Council thought "that is was more efficient to let the sponsoring organization collect and keep the money than for the City to apply its tax, receive the money, and then appropriate it out again." Shope Affidavit, Clerk's Papers, at 43. There is no evidence that the exemption is contrary to that goal.

the exemption, mere imprecision in the correlation between the means employed and the end desired is not enough to render a classification constitutionally infirm. *Dandridge v. Williams,* 397 U.S. 471, 485, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970). Although Forbes has questioned the wisdom of the admission tax exemption, he has not satisfied his burden of demonstrating that the classification is contrary to the articulated purpose of the ordinance.

In summary, Forbes has failed to demonstrate that the admission tax exemption does not satisfy the 3-step minimum scrutiny inquiry. Accordingly, we affirm the trial court's decision that SMC 5.40.026 does not violate equal protection.

We hold that SMC 5.40 does not abridge either the First Amendment guaranty of free speech or the Fourteenth Amendment guaranty of equal protection. The decision of the trial court is affirmed.

CALLOW, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, and SMITH, JJ., and PEARSON, J. Pro Tem., concur.

Reconsideration denied March 28, 1990.