**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID CASSIRER; AVA CASSIRER;
UNITED JEWISH FEDERATION OF SAN
DIEGO COUNTY, a California non-
profit corporation,
                *Plaintiffs-Appellants*,

v.

THYSSEN-BORNEMISZA COLLECTION
FOUNDATION,
                *Defendant-Appellee.*

No. 12-56159

D.C. No.
2:05-cv-03459-
GAF-E

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
August 22, 2013—Pasadena, California

Filed December 9, 2013

Before: Harry Pregerson, Dorothy W. Nelson,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Pregerson

## SUMMARY[*]

### Field Preemption

The panel affirmed in part and reversed in part the district court's order granting the Thyssen-Bornemisza Collection Foundation's motion to dismiss the complaint in an action brought to recover a masterpiece French impressionist painting that was allegedly taken from the plaintiffs' ancestors by the Nazi regime.

California Code of Civil Procedure § 338(c)(3) provides for a six-year limitation period for the recovery of fine art against a museum, gallery, auctioneer, or dealer. The panel held that the district court erred in concluding that § 338 intruded on foreign affairs and therefore striking § 338 down as unconstitutional on the basis of field preemption. The panel further held that the district court correctly concluded that the Foundation's due process challenge to § 338(c)(3) could not be resolved on the Foundation's motion to dismiss. Finally, the panel held that § 338(c)(3) does not violate the Foundation's First Amendment rights.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Stuart R. Dunwoody (argued), Victor A. Kovner, and Catherine E. Maxson, Davis Wright Tremaine LLP, Seattle, Washington, for Plaintiffs-Appellants.

Thaddeus J. Stauber (argued), Sarah E. André, and Michael O. Azat, Nixon Peabody LLP, Los Angeles, California, for Defendant-Appellee.

Kamala D. Harris, Attorney General of California, Susan Duncan Lee, Acting Solicitor General, Mark Breckler, Chief Assistant Attorney General, Angela Sierra, Acting Senior Assistant Attorney General, Antonette Benita Cordero and Catherine Z. Ysrael, Deputy Attorneys General, Los Angeles, California, for Amicus Curiae State of California.

Luis Li, Eric Tuttle, and Amelia L. B. Sargent, Munger Tolles & Olson LLP, Los Angeles, California, for Amici Curiae California Association of Museums.

## OPINION

PREGERSON, Circuit Judge:

The Cassirers appeal the district court's grant of the Thyssen-Bornemisza Collection Foundation's motion to dismiss their complaint without leave to amend. The Cassirers' lawsuit seeks to recover a masterpiece French impressionist painting that was allegedly taken from their ancestors by the Nazi regime. For the Cassirers' claims to be timely, they must rely on amended California Code of Civil Procedure § 338(c)(3), which provides for a six-year limitation period for the recovery of fine art against a museum, gallery, auctioneer, or dealer. The district court held that § 338(c)(3), as amended, is unconstitutional on the basis of field preemption. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for further proceedings.

## STANDARD OF REVIEW

We review the district court's grant of the Foundation's motion to dismiss *de novo*. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). In reviewing the Cassirers' claims, we treat the allegations in the complaint as true. *Id.*

## FACTUAL AND PROCEDURAL BACKGROUND

Camille Pissarro completed the impressionist painting *Rue Saint-Honoré, après-midi, effet de pluie* (the "Painting") in 1897. Julius Cassirer purchased the Painting in 1898. The Cassirers were a well-known Jewish family that played a prominent role in Germany's economic and cultural life.

When Julius died, his son Fritz and Fritz's wife, Lilly, inherited the Painting.

In 1939, Lilly decided to flee Germany because of the discriminatory Nuremberg Laws enacted in 1935 that stripped Jews of their civil rights and citizenship. Lilly and Fritz had to obtain permission to leave Germany and had to subject any works of art that they wished to take with them to an official appraiser. The appraiser was appointed by the Nazis. He told Lilly that she could not take the Painting out of Germany. The appraiser demanded that Lilly hand the Painting over to him for a payment of 900 Reichsmarks (around $360 at 1939 exchange rates). Lilly surrendered the Painting.

In 1943, the Painting was sold to an anonymous purchaser. After the war, Lilly attempted to locate the Painting without success. She obtained compensation for the loss of the Painting in the German courts. When Lilly died in 1962, she named her grandson Claude Cassirer as her sole heir.

In 1976, Baron Hans-Heinrich Thyssen-Bornemisza, one of the world's most prolific private art collectors, bought the Painting. In 1993, the Thyssen-Bornemisza Collection Foundation (the "Foundation"), an agency of the Kingdom of Spain, purchased the Thyssen-Bornemisza collection, including the Painting. Spain provided a palace to house the Thyssen-Bornemisza Museum.

In 2000, Claude first discovered that the Painting was on display in the Thyssen-Bornemisza Museum. By that time, he was living in California. Claude filed this lawsuit in May 2005 against the Foundation and the Kingdom of Spain.

Defendants filed an initial motion to dismiss on the ground that the district court lacked subject matter jurisdiction over the dispute. The district court ruled that it had subject matter jurisdiction under the Foreign Sovereign Immunity Act's exception to sovereign immunity for lawsuits involving rights in property taken in violation of international law. That decision was upheld by a three-judge panel and an en banc panel of the Ninth Circuit. *See Cassirer v. Kingdom of Spain*, 580 F.3d 1048, 1064 (9th Cir. 2009); *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1037 (9th Cir. 2010) (en banc).

After the en banc ruling, Claude died. On remand, Claude's heirs — his son David, daughter Ava, and the United Jewish Federation of San Diego County — were substituted as plaintiffs (collectively, the "Cassirers"). The Cassirers voluntarily dismissed Spain, and the Foundation agreed not to challenge personal jurisdiction.

The Foundation moved to dismiss the Cassirers' complaint on the ground that § 338(c)(3), as amended, is unconstitutional. The district court granted the motion to dismiss without leave to amend on the grounds that: (1) § 338(c)(3) is unconstitutional under foreign affairs field preemption; and (2) as a consequence, the Cassirers' claims are untimely under the more general three-year statute of limitations for recovery of property. The Cassirers timely appealed.

## STATUTORY BACKGROUND

At the time the Cassirers initiated their lawsuit, the California Code of Civil Procedure provided a three-year general statute of limitations for "[a]n action for taking,

detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property." Cal. Civ. Proc. Code § 338(c) (1998). In filing their lawsuit, however, the Cassirers relied on the then-applicable California Code of Civil Procedure § 354.3 enacted in 2002. That statute provided that the owner of "Holocaust-era artwork" — defined as an "article of artistic significance taken as a result of Nazi persecution during the period of 1929 to 1945" — may recover the article from "any museum or gallery" so long as the action is commenced by December 31, 2010. Cal. Civ. Proc. Code § 354.3. We struck down § 354.3 as unconstitutional on the basis of field preemption in *Von Saher v. Norton Simon Museum of Art at Pasadena*, 578 F.3d 1016, 1026–30 (9th Cir. 2009), *as amended by* 592 F.3d 954 (9th Cir. 2010).

Shortly after the ruling in *Von Saher*, the California Legislature amended § 338, the general statute of limitations provisions. The original provisions of § 338(c) were renumbered as § 338(c)(1) and § 338(c)(2). The Legislature added a new provision, (c)(3), which is at the heart of this appeal, that provides for a six-year statute of limitations for "an action for the specific recovery of a work of fine art brought against a museum, gallery, auctioneer, or dealer." Cal. Civ. Proc. Code § 338(c)(3) (2011). The amended statute specifies that the six-year period is triggered on "the actual discovery" by plaintiff of (1) "[t]he identity and the whereabouts of the work of fine art" and (2) "[i]nformation or facts that are sufficient to indicate that the claimant has a claim for a possessory interest in the work of fine art that was unlawfully taken or stolen." *Id.* § 338(c)(3)(A)(i)–(ii). The statute applies to "all pending and future actions commenced on or before December 31, 2017," so long as "the action concerns a work of fine art that was taken within 100 years

prior to the date of enactment of this statute." *Id.*
§ 338(c)(3)(B). That includes any pending actions that have
not yet reached final judgment or whose time to appeal has
not expired. *Id.*

## DISCUSSION

### A. Foreign Affairs Preemption Standards

"The Constitution gives the federal government the
exclusive authority to administer foreign affairs." *Movsesian
v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir.
2012) (en banc), *cert. denied*, 133 S. Ct. 2795 (2013).
Accordingly, "state laws that intrude on this exclusively
federal power are preempted" under the foreign affairs
doctrine. *Id.*

Under foreign affairs preemption there are two grounds
for preemption: (1) conflict preemption and (2) field
preemption. *Id.* Conflict preemption occurs when a state acts
under its traditional power, but the state law conflicts with a
federal action such as a treaty, federal statute, or executive
branch policy. *Id.* at 1071–72. The district court held that
§ 338(c) was not preempted on the basis of conflict
preemption, and the Foundation does not challenge that ruling
on appeal.

Field preemption occurs when a state, "in the absence of
any express federal policy . . . intrudes on the field of foreign
affairs without addressing a traditional state responsibility."
*Id.* at 1072. The Cassirers argue that the district court erred
when it held that § 338(c)(3), as amended, is unconstitutional
on the basis of field preemption. We agree.

**B. Whether Cal. Civ. Proc. Code § 338(c)(3) is Unconstitutional on the Basis of Field Preemption**

Field preemption exists "when a state law (1) has no serious claim to be addressing a traditional state responsibility and (2) intrudes on the federal government's foreign affairs power." *Id*. at 1074.

We need not consider whether § 338(c)(3) addresses an area of traditional state responsibility, because we conclude that § 338(c)(3) does not intrude on the federal government's foreign affairs power.

To intrude on the federal government's foreign affairs power, a statute must have "'more than some incidental or indirect effect' on foreign affairs." *Movsesian*, 670 F.3d at 1076 (quoting *Zschernig v. Miller*, 389 U.S. 429, 434 (1968)). For example, in *Zschernig v. Miller*, the Supreme Court struck down as unconstitutional an Oregon probate statute on the basis of field preemption. 389 U.S. at 430-41. There, the Oregon statute provided that nonresident aliens could not receive personal property unless they could show:

> (1) the existence of a reciprocal right of a United States citizen to take property on the same terms as a citizen or inhabitant of the foreign country; (2) the right of United States citizens to receive payment here of funds from estates in the foreign country; and (3) the right of the foreign heirs to receive the proceeds of Oregon estates "without confiscation."

*Id.* at 431–32 (quoting Or. Rev. Stat. § 111.070 (1957)).

As applied, "Oregon judges in construing [the Oregon probate statute sought] to ascertain whether 'rights' protected by foreign law are the same 'rights' that citizens of Oregon enjoy." *Id.* at 440. In so doing, Oregon courts had repeatedly determined that if "the alleged foreign 'right' may be vindicated only through Communist-controlled state agencies, then there is no 'right' of the type [the Oregon statute] requires." *Id.* Consequently, the Oregon statute "ha[d] a direct impact upon foreign relations." *Id.* at 441.

In our other field preemption cases, we found intrusion into foreign affairs on the face of the statutes. Section 354.3, the statute for Holocaust-era artwork, explicitly created a "special rule that applie[d] only to a newly defined class" of plaintiffs who had suffered wartime injuries. *Von Saher*, 592 F.3d at 966 (quoting *Deutsch v. Turner Corp.*, 324 F.3d 692, 708 (9th Cir. 2003)). Section 354.4 "express[ed] a distinct political point of view on a specific matter of foreign policy" by labeling the actions of the Ottoman Empire "genocide" and providing relief only for "'Armenian Genocide victim[s].'" *Movsesian*, 670 F.3d at 1076 (quoting Cal. Civ. Proc. Code § 354.4(b)). Likewise, § 354.6 intruded on the federal government's foreign affairs power because "California [sought] to redress wrongs committed in the course of the Second World War" by providing a right of recovery only to "'Second World War slave labor victims' and 'Second World War forced labor victims.'" *Deutsch*, 324 F.3d at 712.

The district court concluded that § 338(c)(3) intruded on foreign affairs on two grounds: (1) § 338(c)(3) created a remedy for wartime injuries and (2) § 338(c)(3) is functionally equivalent to unconstitutional § 354.3. We conclude that the district court erred on both counts.

First, the district court accurately noted that under *Von Saher*, *Movsesian*, and *Deutsch*, "states may not *create their own remedies* to the problem of looted Holocaust-era art or other wartime injuries, and they may not require their courts to make politically sensitive determinations on matters of foreign policy."[1] Section 338(c)(3), however, does not create a remedy for wartime injuries by creating a new cause of action for the recovery of artwork. *Contra Von Saher*, 592 F.3d at 966. Section 338(c)(3) extends the statute of limitations for preexisting claims concerning a class of artwork that is unrelated to foreign affairs on its face. It does not require that those claims arise out of wartime injuries, or from any other specific source that might implicate the federal government's foreign affairs power. Because § 338(c)(3) is silent on matters of foreign affairs, it does not convey "a 'distinct juristic personality' from that of the United States when it comes to matters of foreign affairs.'" *Id.* at 965. Nor is there any evidence in the record at this stage in the proceedings that California courts, as in *Zschernig*, are applying § 338(c)(3) to "establish [the State's] own foreign policy." 389 U.S. at 441.

---

[1] The district court initially reasoned that adjudicating the Cassirers' claims would require it "to review the legitimacy of the compensation provided to Lilly Cassirer Neubauer by the German government in 1958" because "whether [Lilly] was adequately compensated for the Painting will necessarily bear on the question whether [the Cassirers] retain title to it today." But in considering the Cassirers' motion for reconsideration, the district court acknowledged that this would not be the case. The district court held that the German Federal Court of Justice's written decision in *Sachs v. Deutches Historisches Museum* shows that "under German law, the compensation received by Ms. Neubauer in 1958 did not divest her or her heirs of title to the [Painting]."

Second, the district court incorrectly determined that § 338(c)(3) was functionally equivalent to unconstitutional § 354.3. The district court emphasized that the statute "limits its application to claims to art taken after 1910" by fraud or duress, which "clearly indicates that the extended limitations period encompasses Holocaust-era claims." But whether a statute of limitations *may* permit Holocaust era-claims is not the test for preemption. In *Von Saher*, we remanded plaintiff's claims so that the district court could determine whether plaintiff's claims to recover Holocaust-era artwork were timely under the general provisions of § 338, before the statute was amended. 592 F.3d at 968–70.

And in fact, § 338 is not functionally equivalent to unconstitutional § 354.3. While § 354.3 covered only claims to recover "Holocaust-era artwork," § 338(c)(3) extends to any "work of fine art." Indeed, since its enactment, non-Holocaust-era artwork cases have invoked § 338(c)(3). *See W. Prelacy of the Armenian Apostolic Church v. J. Paul Getty Museum*, No. BC438824 (L.A. Cnty. Super. Ct. Aug. 1, 2011) (suing over a manuscript allegedly stolen in 1915); *Rafaelli v. Getty Images, Inc.*, No. 2:12-cv-00563-CAS-PJW (C.D. Cal. Jan. 20, 2012) (suing over photographs created in the 1970s).

We find that the district court erred in concluding that § 338 intrudes on foreign affairs. We thus conclude that the district court erred in striking § 338 down as unconstitutional on the basis of field preemption.

## C. Whether § 338(c)(3) Violates the Foundation's Due Process Rights

The Foundation argues that § 338(c)(3) violates its due process rights by retroactively stripping it of its vested property interest acquired in the Painting when the longstanding three-year statute of limitations period expired. We affirm the district court's ruling that "the Foundation cannot establish such a claim on the basis of the current record."

In *Campbell v. Holt*, the Supreme Court established that:

> It may . . . very well be held that in an action to recover real or personal property, where the question is as to the removal of the bar of the statute of limitations by a legislative act passed after the bar has become perfect, that such act deprives the party of his property without due process of law. The reason is that, by the law in existence before the repealing act, the property had become the defendant's. Both the legal title and the real ownership had become vested in him, and to give the act the effect of transferring this title to plaintiff would be to deprive him of his property without due process of law.

*Campbell v. Holt*, 115 U.S. 620, 623 (1885).

But as the district court emphasized, *Campbell* applies only when the property at issue had vested and had become the defendant's. The Supreme Court explained in *Chase Securities Corp. v. Donaldson* that, "where lapse of time has

*not* invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, *may repeal or extend a statute of limitations*." 325 U.S. 304, 311-12 (1945) (emphasis added). Accordingly, we have explained that "[w]here a lapse of time has not invested a party with title to real or personal property, a state legislature may extend a lapsed statute of limitations without violating the fourteenth amendment, regardless of whether the effect is seen as creating or reviving a barred claim." *Starks v. S. E. Rykoff Co.*, 673 F.2d 1106, 1109 (9th Cir. 1982).

The district court found that whether a lapse of time invested the Foundation with title to the Painting required the development of the following factual disputes, not pleaded in the complaint: (1) the history of the Painting's transfer; (2) whether the Painting was stolen in the Foundation's chain of title; (3) whether the Foundation's possession of the Painting was uninterrupted for adverse possession purposes; and (4) whether the Foundation's possession of the Painting was open for adverse possession purposes. None of these factual disputes are resolved in the Foundation's favor by the facts pleaded in the complaint.

We disagree with the Cassirers, however, that the Foundation's due process claim may be resolved conclusively in the Cassirers' favor at this juncture. The Cassirers claim that the constitutional analysis utilized in *Campbell* and *Chase* is outdated and that the modern approach is to evaluate whether § 338(c)(3) passes rational basis review. But the Cassirers do not proffer any authority that involves whether the statute at issue harmed a defendant's interest in a vested property right. Instead, they rely on inapposite cases. *See, e.g.*, *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1100 (9th Cir. 2003) (stating "*retrospective economic legislation*

must only pass rational basis review" (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992) (emphasis added))); *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001) ("[T]he Supreme Court has not blanched when settled *economic expectations* were upset, as long as the legislature was pursuing a rational policy." (emphasis added)). The Cassirers have not shown that § 338(c)(3) need only pass rational basis review if, in fact, the Foundation had a vested interest in the Painting. We conclude that the district court correctly held that the Foundation's due process challenge cannot be resolved on the Foundation's motion to dismiss.

## D. Whether § 338(c)(3) Violates the Foundation's First Amendment Rights

The Foundation argues that § 338(c)(3) violates its First Amendment rights because § 338(c)(3) targets museums and art galleries "for unfavorable treatment." We disagree.

The district court correctly reasoned that § 338(c)(3) "does not 'burden' expression in any manner cognizable under the Supreme Court's First Amendment jurisprudence." The Foundation relies solely on cases in which the statutes at issue imposed *a tax* on certain entities engaged in free speech activities. *See Minneapolis Star & Tribune Co. v. Minn. Com'r of Revenue*, 460 U.S. 575, 592–93 (1983) (holding that a state's "special tax on the press [which] limit[ed] its effect to only a few newspapers" was subject to strict scrutiny and was unconstitutional); *Festival Enters.*, *Inc. v. City of Pleasant Hill*, 182 Cal. App. 3d 960, 962 (1986) (holding "that the city's 'admissions tax,' as applied to plaintiff theater owners, impose[d] an impermissible burden on protected speech"). Section 338(c)(3) does not impose a tax on the

Foundation. Further, the statute merely permits a claim to go forward or not depending on the timing of the discovery of the claim, not on the basis of any protected speech.

We therefore conclude that the Foundation failed to demonstrate that § 338(c)(3) burdens its right to free speech. It follows that § 338(c)(3) is not subject to strict scrutiny. Section 338(c)(3) passes rational basis review because it is rationally related to the goals of extending and clarifying the statute of limitations period. The Legislature could rationally choose to extend the statute of limitations period to six years for actions against certain entities that it deemed "sophisticated." Sen. Comm. on the Judiciary, June 21, 2010, at 5. The Legislature believed that museums, galleries, auctioneers, and dealers have access to methods of tracing title to their artifacts and are on notice that often "lost artifacts have a break in the chain of title." *Id*.[2] The Legislature clarified that the statute of limitations period for the six-year period is triggered on actual notice. Thus, § 338(c)(3) passes rational basis review and is not unconstitutional.

---

[2] The Foundation contends that the California Legislature improperly declined to incorporate California's borrowing statute into § 338(c)(3). California's borrowing statute provides that when a cause of action arises in another state or foreign country and would be barred in that state or country, "the action cannot be brought in California." Cal. Civ. Proc. Code § 361. The Legislature's decision not to apply the borrowing statute is rationally related to the goal of providing additional time to recover stolen artwork because of the complex legal problems involved with such claims. Further, the Foundation incorrectly argues that museums and galleries will never be able to escape a claim that is barred in another jurisdiction. Even absent § 361, California law follows choice of law rules in the event "the conflict concerns a statute of limitations." *Deutsch*, 324 F.3d at 716. Thus, another jurisdiction's statute of limitations period may apply to plaintiff's claim under a choice of law analysis. *Id.*

**CONCLUSION**

We AFFIRM in part and REVERSE in part the district court's order dismissing the Cassirers' complaint. We REVERSE the district court's finding that § 338(c)(3) is preempted on the basis of field preemption. We AFFIRM the district court's rulings that the Foundation's due process challenge is not viable on a motion to dismiss and that § 338(c)(3) does not violate the Foundation's First Amendment rights. We REMAND for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**