**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MICHIKO SHIOTA GINGERY,
an individual; KOICHI MERA,
an individual; GAHT-US
CORPORATION, a California
non-profit corporation,
*Plaintiffs-Appellants,*

v.

CITY OF GLENDALE, a
municipal corporation,
*Defendant-Appellee.*

No. 14-56440

D.C. No.
2:14-cv-01291-PA-AJW

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted June 7, 2016
Pasadena, California

Filed August 4, 2016

Before: Stephen Reinhardt, and Kim McLane Wardlaw,
Circuit Judges, and Edward R. Korman,[*] Senior District
Judge.

---

[*] The Honorable Edward R. Korman, Senior District Judge for the U.S.
District Court for the Eastern District of New York, sitting by designation.

Opinion by Judge Wardlaw;
Concurrence by Judge Korman

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's dismissal of an action brought by a Japanese-American resident of Los Angeles and a non-profit organization challenging the City of Glendale's installation of a public monument commemorating the "Comfort Women," an unknown number of women that South Korea asserts, but Japan disputes, were forced to serve as sexual partners to members of the Japanese Imperial Army during World War II and the decade preceding it.

The panel first held that plaintiffs had standing because the "inability to unreservedly use" Glendale's Central Park, where the monument was installed, constituted an injury in fact for purposes of Article III standing.

Viewing the complaint's factual allegations in the light most favorable to plaintiffs, the panel concluded that Glendale's installation of the monument concerned an area of traditional state responsibility and did not intrude on the federal government's foreign affairs power. The panel therefore agreed with the district court that plaintiffs had not plausibly claimed that Glendale's actions were preempted

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

under the foreign affairs doctrine. The panel held that the Supremacy Clause does not preempt a local government's expression, through a public monument, of a particular viewpoint on a matter related to foreign affairs.

Concurring, Judge Korman wrote separately to suggest that the plaintiffs had not alleged a valid cause of action that anchored their claim of foreign affairs preemption.

---

**COUNSEL**

Ronald S. Barak (argued), Law Offices of Ronald S. Barak, Pacific Palisades, California; Maxwell M. Blecher, Donald R. Pepperman, and Taylor C. Wagniere, Blecher Collins Pepperman & Joye, Los Angeles, California; for Plaintiffs-Appellants.

Christopher S. Munsey (argued) and Bradley H. Ellis, Sidley Austin LLP, Los Angeles, California; Michael J. Garcia, Ann M. Maurer, and Andrew Rawcliffe, Glendale City Attorney's Office, Glendale, California; for Defendant-Appellee.

Barry A. Fisher, Fleishman & Fisher, Los Angeles, California, for Amicus Curiae the Global Alliance for Preserving the History of WW II in Asia.

Paul L. Hoffman and Catherine Sweetser, Schonbrun DeSimone Seplow Harris & Hoffman LLP, Venice, California, for Amicus Curiae the Korean Forum of California.

**OPINION**

WARDLAW, Circuit Judge:

   In 2013, the City of Glendale installed a public monument commemorating the "Comfort Women," an unknown number of women that South Korea asserts, but Japan disputes, were forced to serve as sexual partners to members of the Japanese Imperial Army during World War II and the decade preceding it.  Plaintiffs, a Japanese-American resident of Los Angeles and a non-profit organization, claim that Glendale's installation of the "Korean Sister City 'Comfort Woman' Peace Monument" intrudes on the federal government's exclusive foreign affairs power and is thereby preempted under the foreign affairs doctrine.  We conclude that Plaintiffs have standing to challenge Glendale's installation of the monument but have failed to state a claim that Glendale's actions are preempted.  Accordingly, we affirm the district court's judgment dismissing Plaintiffs' preemption claim with prejudice.

## I.  Factual and Procedural History

   For several decades, Japan and South Korea have engaged in a heated and politically sensitive debate concerning historical responsibility for the Comfort Women.  South Korea has urged Japan to redress grievances relating to the Comfort Women.  Japan denies responsibility for the recruitment of the Comfort Women and asserts that, in any event, all World War II-related claims, including those related to the Comfort Women, were resolved pursuant to postwar treaties between Japan and the allied nations.  According to Plaintiffs' complaint, the United States has generally "avoid[ed] taking sides" and encouraged Japan and

South Korea to resolve the dispute through "further government-to-government negotiations."

On July 9, 2013, the Glendale City Council approved the installation of the "'Comfort Woman' Peace Monument" in Glendale Central Park, a public park in Glendale, California. Unveiled three weeks later, the monument is a 1,100-pound bronze statue of a young girl in Korean dress sitting next to an empty chair with a bird perched on her shoulder. Alongside the statue is a bronze plaque, which reads in part:

> In memory of more than 200,000 Asian and Dutch women who were removed from their homes in Korea, China, Taiwan, Japan, the Philippines, Thailand, Vietnam, Malaysia, East Timor and Indonesia, to be coerced into sexual slavery by the Imperial Armed Forces of Japan between 1932 and 1945.

> And in celebration of proclamation of "Comfort Women Day" by the City of Glendale on July 30, 2012, and of passing of House Resolution 121 by the United States Congress on July 30, 2007, urging the Japanese Government to accept historical responsibility for these crimes.

> It is our sincere hope that these unconscionable violations of human rights shall never recur.

Plaintiffs Michiko Shiota Gingery, GAHT-US Corporation ("GAHT-US"), and Koichi Mera claim that the monument interferes with the federal government's foreign

affairs power and violates the Supremacy Clause. Plaintiffs' complaint further alleges that by installing the monument, Glendale "has taken a position in the contentious and politically-sensitive international debate concerning the proper historical treatment of the former comfort women." In Plaintiffs' view, Glendale's monument disrupts the federal government's foreign policy of nonintervention and encouragement of peaceful resolution of the Comfort Women dispute. The complaint seeks an order declaring Glendale's installation of the monument unconstitutional and compelling Glendale to remove the monument from public property.[1]

The district court dismissed Plaintiffs' constitutional claim with prejudice. The district court first determined that Plaintiffs lacked standing. Alternatively, the district court found that "[e]ven if Plaintiffs possessed Article III standing, dismissal is still appropriate because Plaintiffs have failed to allege facts that state a cognizable legal theory." The district court reasoned that the complaint failed to allege facts that could plausibly support the conclusion that the monument conflicted with the executive branch's foreign policy. Plaintiffs timely appeal.

## II. Standard of Review

"The district court's determination whether a party has standing, and whether there is subject matter jurisdiction, is reviewed de novo." *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1098 (9th Cir. 2016). "We review de

---

[1] Plaintiffs also claim that the installation of the monument violates the Glendale Municipal Code. The district court declined to exercise supplemental jurisdiction over this claim and dismissed it without prejudice.

novo a district court's dismissal for failure to state a claim under Rule 12(b)(6)." *Harkonen v. U.S. Dep't of Justice*, 800 F.3d 1143, 1148 (9th Cir. 2015). "We may affirm the district court's dismissal on any ground that is supported by the record, whether or not the district court relied on the same ground or reasoning ultimately adopted by this court." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1121 (9th Cir. 2013).

## III.  Discussion

*A.  Standing*

We must first determine whether Plaintiffs have standing to pursue their preemption claim.  To establish Article III standing, Plaintiffs must demonstrate "(1) the existence of an injury-in-fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031, 1043 (9th Cir. 2015).  "In many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases." *Allen v. Wright*, 468 U.S. 737, 751–52 (1984).[2]

Mera is a Japanese-American resident of Los Angeles. Mera "disagrees with and is offended by the position espoused by Glendale" through the monument.  Mera "would

---

[2] While this appeal was pending, Plaintiffs notified us that Gingery had died.  As the parties agree, Gingery's claim for injunctive and declaratory relief is therefore moot.  *See Kennerly v. United States*, 721 F.2d 1252, 1260 (9th Cir. 1983).

like to use Glendale's Central Park and its Adult Recreation Center" but now "avoids doing so." Furthermore, "the presence of the Public Monument diminishes Mera's enjoyment of the Central Park and its Adult Recreation Center."

Mera's allegations parallel those of other plaintiffs, particularly in Establishment Clause and environmental cases, who have satisfied the injury-in-fact requirement by alleging that their use and enjoyment of public land has been impaired. In the context of challenges to government-sponsored displays of religion on public property, we "have repeatedly held that inability to unreservedly use public land suffices as injury-in-fact." *Buono v. Norton*, 371 F.3d 543, 547 (9th Cir. 2004); *see also Ellis v. City of La Mesa*, 990 F.2d 1518, 1523 (9th Cir. 1993) (holding that a plaintiff satisfied the injury-in-fact requirement by alleging that he was "offended" by the presence of a cross on public property, which he "otherwise would visit" but instead "avoids"). Similarly, in environmental cases, plaintiffs generally satisfy the injury-in-fact requirement by alleging that they are less able to use land affected by a defendant's conduct. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 182–83 (2000) (holding that plaintiffs who "would use" allegedly polluted areas located several miles from their homes, but "refrained" from doing so, had established injury in fact); *Nat. Res. Def. Council v. EPA*, 542 F.3d 1235, 1245 (9th Cir. 2008) (injury in fact established where plaintiffs alleged that their "use and enjoyment" of certain waterways "has been diminished" due to pollution). Although Mera asserts neither an Establishment Clause nor environmental claim, cases from these contexts may properly guide our evaluation of his alleged injury. *See Valley Forge Christian Coll. v. Ams.*

*United for Separation of Church & State, Inc.*, 454 U.S. 464, 488 (1982) (rejecting the argument that Establishment Clause cases create any "special exceptions" to the requirements of Article III standing).

Consistent with these precedents, we conclude that Mera's "inability to unreservedly use" Glendale's Central Park constitutes an injury in fact for purposes of Article III standing. *Buono*, 371 F.3d at 547. Like the Establishment Clause plaintiffs in *Ellis* and *Buono*, Mera allegedly "avoids" using certain public land, which he has previously visited and "would like to use" again, because he is "offended" by the government-sponsored display it contains. *See id.* at 546–47; *Ellis*, 990 F.2d at 1523. And like the plaintiffs in environmental cases, Mera has alleged both that he avoids public land that he would like to use again, and that his enjoyment of the park and the park's facilities has been "diminshe[d]." *See Laidlaw*, 528 U.S. at 182–83; *Nat. Res. Def. Council*, 542 F.3d at 1245. These allegations satisfy the injury-in-fact requirement.

Mera's injury is also "fairly traceable to the challenged action" of Glendale. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation and alterations omitted). The complaint alleges that Glendale "approved the installation" of the monument, which was unveiled to the public three weeks later. Mera avoids using Glendale's Central Park and its Adult Recreation Center "as a result of his alienation due to the Public Monument." These allegations "establish a line of causation" between Glendale's actions in approving the installation of the monument and Mera's alleged harm from the presence of the monument in the park. *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citation omitted).

Finally, Mera has demonstrated "that a favorable decision is likely to redress" his injury. *Barnes-Wallace v. City of San Diego*, 530 F.3d 776, 784 (9th Cir. 2008). If Glendale is ordered to remove the monument from the park, Mera likely would not feel "alienat[ed] due to the Public Monument" or need to avoid using the park. Therefore, Mera has satisfied the redressability requirement of Article III standing.

In sum, we conclude that Mera has Article III standing, and the district court erred in concluding otherwise.**[3]** If Plaintiffs truly lacked standing, the district court would not have had jurisdiction to reach the merits of their complaint. *See Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1106 (9th Cir. 2006). However, because we conclude that Mera does have standing, we may proceed to consider the district court's determination that Plaintiffs failed to state a claim upon which relief may be granted. *See, e.g.*, *Cal. ex rel. Imperial Cty. Air Pollution Control Dist. v. U.S. Dep't of the Interior*, 767 F.3d 781, 787 (9th Cir. 2014) (disagreeing with the district court's finding that plaintiffs lacked standing, but nonetheless affirming the judgment); *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1031 (D.C. Cir. 2003) (disagreeing with the district court's finding that plaintiff lacked standing but proceeding to the merits of the dispute).

---

**[3]** Because Mera has standing and "the presence in a suit of even one party with standing suffices to make a claim justiciable," we need not address whether GAHT-US satisfies the requirements for organizational standing. *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 981 (9th Cir. 2013) (citation omitted).

## B.  Failure to State a Claim

The district court concluded that Plaintiffs had failed to state a claim that Glendale's installation of the Comfort Women monument is preempted under the foreign affairs doctrine.  *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause). Viewing the complaint's factual allegations in the light most favorable to Plaintiffs, we conclude that Glendale's installation of the monument concerns an area of traditional state responsibility and does not intrude on the federal government's foreign affairs power.  We therefore agree with the district court that Plaintiffs have not plausibly claimed that Glendale's actions are preempted.

It is well established that the federal government holds the exclusive authority to administer foreign affairs.  *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc); *see also United States v. Pink*, 315 U.S. 203, 233 (1942) ("Power over external affairs is not shared by the States; it is vested in the national government exclusively."). Under the foreign affairs doctrine, state laws that intrude on this exclusively federal power are preempted, under either the doctrine of conflict preemption or the doctrine of field preemption.  *Movsesian*, 670 F.3d at 1071.[4]  Under the doctrine of conflict preemption, a state action must yield to federal executive authority where "there is evidence of clear conflict between the policies adopted by the two."  *Am. Ins.*

---

[4] Municipalities are subject to the same rules of preemption as the states. *See Hines v. Davidowitz*, 312 U.S. 52, 63 (1941) ("Our system of government is such that the interest of the cities, counties and states, no less than the interest of the people of the whole nation, imperatively requires that federal power in the field affecting foreign relations be left entirely free from local interference.").

*Ass'n v. Garamendi*, 539 U.S. 396, 421 (2003). Under the doctrine of field preemption, even in the absence of any express federal policy, a state action may be preempted where (1) its "real purpose" does not concern an area of traditional state responsibility, and (2) it intrudes on the federal government's foreign affairs power. *Movsesian*, 670 F.3d at 1074–75. Here, Plaintiffs do not argue that Glendale's installation of the monument conflicts with the federal government's policy on the Comfort Women dispute; indeed, the complaint alleges that the United States has "consistently sought to avoid" taking a position on the issue. Instead, Plaintiffs invoke the doctrine of field preemption.

Applying the doctrine of field preemption, we have found that a state or local government is more likely to exceed the limits of its power when it creates remedial schemes or regulations to address matters of foreign affairs. In *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954 (9th Cir. 2010), for example, we held that a California statute, which extended the statute of limitations for civil actions to recover looted Holocaust-era artwork, was preempted because the statute would often require courts to review the reparation decisions of foreign nations, and thus intruded on the federal government's power "to make and resolve war." *Id.* at 965–68. More recently, in *Movsesian*, our Court, sitting en banc, concluded that a California statute, which vested California courts with jurisdiction over certain insurance claims brought by "Armenian genocide victim[s]" and extended the statute of limitations for those claims, intruded on the field of foreign affairs. 670 F.3d at 1076–77. We explained that the California statute not only "expresses a distinct political point of view on a specific matter of foreign policy," but also "subject[s] foreign insurance companies to lawsuits in California" and would require courts applying the

statute to engage in "a highly politicized inquiry into the conduct of a foreign nation."  *Id.* at 1076.

What we have *not* considered, however, is the extent to which a state or local government may address foreign affairs through expressive displays or events, rather than through remedies or regulations.  In *Movsesian*, for example, we emphasized that the law at issue was not "merely expressive" and declined to "offer any opinion about California's ability to express support for Armenians by, for example, declaring a commemorative day."  *Id.* at 1077 & n.5; *see also Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 61 n.18 (1st Cir. 1999) (holding that the Massachusetts Burma law, which restricted the ability of Massachusetts and its agencies to purchase goods or services from companies that do business with Burma, was preempted but noting that "[w]e do not consider here whether Massachusetts would be authorized to pass a resolution condemning Burma's human rights record but taking no other action with regard to Burma"), *aff'd sub nom. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000).  Here, we confront a variant of the issue we left open in *Movsesian*: whether the Supremacy Clause preempts a local government's expression, through a public monument, of a particular viewpoint on a matter related to foreign affairs. Under the circumstances of this case, we conclude that it does not.

First, Glendale's establishment of a public monument to advocate against "violations of human rights" is well within the traditional responsibilities of state and local governments. "Governments have long used monuments to speak to the public." *Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009).  In addition, "[c]ities, counties, and states have a long tradition of issuing pronouncements, proclamations, and

statements of principle on a wide range of matters of public interest, including other matters subject to preemption, such as foreign policy and immigration." *Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1414 (9th Cir. 1996). For example, local governments have established memorials for victims of the Holocaust[5] and the Armenian genocide,[6] and leaders of local governments have publicly taken positions on matters of foreign affairs, from South African apartheid in the 1980s[7] to the recent actions of Boko Haram.[8] Here, by dedicating a local monument to the plight of the Comfort Women in World War II, Glendale has joined a long list of other American cities that have likewise used public monuments to express their views on events that occurred beyond our borders.

In Plaintiffs' view, however, Glendale's "real purpose" is to insert itself into foreign affairs. We disagree. According to the monument's plaque, Glendale's self-stated purposes are: (i) to preserve the "memory" of the Comfort Women, (ii) to "celebrate" Glendale's proclamation of a "Comfort Women Day" and the House of Representatives' decision to pass a resolution addressing historical responsibility for the

---

[5] *See Holocaust Memorials*, Ctr. for Holocaust & Genocide Stud., Univ. of Minn., http://ittybittyurl.com/2EI6 (last visited July 27, 2016).

[6] *See Monument at Bicknell Park in Montebello, California*, Armenian Nat'l Inst., http://ittybittyurl.com/2EI3 (last visited July 27, 2016).

[7] *See* Bill Boyarsky, *Mayor's Blast at Apartheid Affirms Appeal to Blacks*, L.A. Times, Jan. 20, 1985, http://ittybittyurl.com/2EI4.

[8] *See* Press Release, City of Atlanta, Statement of Mayor Kasim Reed on the Kidnapped Nigerian Girls (May 7, 2014), *available at* http://ittybittyurl.com/2EI5.

Comfort Women, and (iii) to express "sincere hope" that "these unconscionable violations of human rights shall never recur." These purposes—memorializing victims and expressing hope that others do not suffer a similar fate—are entirely consistent with a local government's traditional function of communicating its views and values to its citizenry. Moreover, even if Glendale's purpose was, as one City Council member stated, to "put the city of Glendale on the international map," this purpose does not conflict with the role local governments have traditionally played in public discourse related to foreign affairs. *Cf. Farley v. Healey*, 431 P.2d 650, 653 (Cal. 1967) ("Even in matters of foreign policy it is not uncommon for local legislative bodies to make their positions known."). Therefore, Glendale's "real purpose" in installing the Comfort Women monument concerns "an area of traditional state responsibility." *Movsesian*, 670 F.3d at 1075.

Second, even if Glendale were acting outside an area of traditional state responsibility, Plaintiffs have not plausibly alleged that Glendale's actions "intrude[] on the federal government's foreign affairs power." *Id.* at 1074. "To intrude on the federal government's foreign affairs power, a [state's action] must have more than some incidental or indirect effect on foreign affairs." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 737 F.3d 613, 617 (9th Cir. 2013) (citation omitted). While Plaintiffs broadly assert that the monument "threatens to negatively affect U.S. foreign relations with Japan," Plaintiffs do not support this assertion with specific allegations that Glendale's actions have had, or are likely to have, any appreciable effect on foreign affairs. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). At most, Plaintiffs allege that various Japanese officials have expressed disapproval of the monument. However, Plaintiffs

have not further alleged that this disapproval has in any way affected relations between the United States and Japan. In addition, Plaintiffs do not allege that the federal government has expressed any view on the monument—much less complained of interference with its diplomatic agenda. Thus, Plaintiffs have failed to plausibly allege that Glendale's installation of the monument has had "more than some incidental or indirect effect on foreign affairs." *Cassirer*, 737 F.3d at 617 (citation omitted).

Moreover, in contrast to state actions we have found preempted, Glendale has taken no action that would affect the legal rights and responsibilities of any individuals or foreign governments. For example, Glendale has not, as in *Von Saher* or *Movsesian*, created a cause of action for victims affected by the Comfort Women program, or extended the statute of limitations for any existing cause of action that might provide relief to these individuals. *See Movsesian*, 670 F.3d at 1076–77; *Von Saher*, 592 F.3d at 965–68. Nor has Glendale imposed any regulatory restrictions on the exchange of goods manufactured by parties who may have played a role in the Comfort Women program. *See Crosby*, 530 U.S. at 373–74. Rather, by erecting a symbolic display commemorating what it views as a historical tragedy, Glendale has appropriately exercised the expressive powers of a local government and stopped short of interfering with the federal government's foreign affairs power.

Glendale's installation of the Comfort Women monument concerns an area of traditional state responsibility and does not intrude on the federal government's foreign affairs power. As a result, Plaintiffs have failed to state a claim that

Glendale's actions are preempted. *See Movsesian*, 670 F.3d at 1074.**[9]**

## C. Leave to Amend

Finally, Plaintiffs argue that the district court abused its discretion by dismissing their complaint without granting leave to amend. "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Before the district court, Plaintiffs did not request leave to amend, and the district court found that no amendment could cure the complaint's deficiencies. On appeal, Plaintiffs have not identified any additional allegations that could save their complaint from dismissal. Accordingly, we conclude that the district court was within its discretion to dismiss Plaintiffs' complaint without leave to amend.

---

**[9]** As an alternative basis for affirming the district court, Judge Korman concludes that Plaintiffs lack a cause of action under 42 U.S.C. § 1983. In Judge Korman's view, the foreign affairs provisions of the Constitution do not create an individual right enforceable under Section 1983. He may very well be correct. However, we decline to address this issue of first impression for our Court. *See Gerling Glob. Reinsurance Corp. of Am. v. Garamendi*, 400 F.3d 803, 810–11 (9th Cir.), *as amended on denial of reh'g*, 410 F.3d 531 (9th Cir. 2005). It was not raised by either party to the district court or before us, and the district court did not rule on this basis. "[W]e are hesitant to address an issue without the benefit of any briefing from the parties." *Bledsoe v. Bledsoe* (*In re Bledsoe*), 569 F.3d 1106, 1113 (9th Cir. 2009). In any event, we need not reach the issue in this appeal, for "[w]e may affirm the district court's dismissal on any ground that is supported by the record." *Hartmann*, 707 F.3d at 1121.

## IV. Conclusion

The Constitution places important limits on a municipality's ability to engage in matters related to foreign affairs. We conclude that Glendale has not exceeded those limits by installing a monument to commemorate the Comfort Women. Therefore, the district court properly dismissed Plaintiffs' preemption claim.

**AFFIRMED.**

KORMAN, District Judge, concurring:

While I agree that Koichi Mera, one of the plaintiffs, meets the "irreducible constitutional minimum" requirements to allege Article III standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), and do not take issue with the manner in which the majority resolves the merits of the appeal, I write separately to suggest that the plaintiffs have not alleged a valid cause of action that anchors their claim of foreign affairs preemption. Simply mouthing the words foreign affairs preemption does not do it. The plaintiffs assert only in the vaguest manner that their complaint is brought under 42 U.S.C. § 1983. Nevertheless, Section 1983 cannot support their cause of action. Nor is an equitable cause of action to restrain regulatory action in violation of the Constitution available here.

I. *Section 1983.*

The availability of a cause of action under Section 1983 depends upon whether a plaintiff has alleged "the deprivation

of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983; *see also Golden State Transit Corp. v. City of Los Angeles (Golden State II)*, 493 U.S. 103, 105 (1989).  The right being deprived here cannot be found in the Supremacy Clause, which "is not the 'source of any federal rights.'"  *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015) (quoting *Golden State II*, 493 U.S. at 107); *see also Associated Gen. Contractors, San Diego Chapter, Inc., Apprenticeship & Training Tr. Fund v. Smith*, 74 F.3d 926, 931 (9th Cir. 1996) ("[P]reemption of state law under the Supremacy Clause—being grounded not on individual rights but instead on considerations of power—will not [itself] support an action under section 1983 . . . ." (quoting *Segundo v. City of Rancho Mirage*, 813 F.2d 1387, 1394 (9th Cir. 1987)); *White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 848 (9th Cir. 1985) ("We believe that § 1983 was not intended to encompass those constitutional provisions which allocate power between the state and federal government.").

Moreover, neither the Supreme Court nor the Ninth Circuit has ever recognized that the foreign affairs provisions of the Constitution, which certainly do not confer any rights on their face, *see, e.g.*, U.S. Const. art. II, § 2, cls. 1–2; *id.* art. I, § 8, cls. 1, 3, 4, 10–14, contain an implicit individual right. Indeed, in *Gerling Global Reinsurance Corporation of America v. Garamendi*, 400 F.3d 803 (9th Cir. 2005), we observed that the district court "may have been correct" in the "abstract" when it concluded that the foreign affairs power did not "implicate a right, privilege or immunity secured by the Constitution or laws of the United States," *id.* at 810. Nevertheless, because we concluded they were prevailing parties for reasons that need not be discussed, the plaintiffs were entitled to an award of counsel fees pursuant to

42 U.S.C. § 1988. While we did not definitively resolve the issue, we "assum[ed] that the foreign affairs power does not confer rights within the meaning of § 1983." *Gerling*, 400 F.3d at 807. Judge Graber, who concurred in the result, directly addressed the issue. She observed without qualification that "the foreign affairs power, like the Supremacy Clause, creates no individual rights enforceable under 28 U.S.C. § 1983." *Id.* at 811. Because I agree that the foreign affairs provisions create no individual rights, the plaintiffs lack a cause of action pursuant to 42 U.S.C. § 1983.

II. *Equitable Cause of Action.*

Unlike Section 1983, the availability of an equitable cause of action to enjoin purportedly unconstitutional conduct does not necessarily rely upon the fact that a particular constitutional provision confers an individual right on the plaintiff. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010). Instead, in a preemption case, the availability of such a cause of action hinges on the plaintiff's being subject to an enforcement or other regulatory action. The Supreme Court has long recognized that a plaintiff may bring a suit to enjoin unconstitutional regulatory conduct. Courts often cite as the forebear of that type of equitable action the case of *Ex parte Young*, 209 U.S. 123 (1908). *See, e.g.*, *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002). *Young* was not a preemption case; it involved a claim by shareholders of a railroad that a state law regulating railroad rates violated, *inter alia*, the Fourteenth Amendment's Due Process Clause. Nevertheless, the *Young* Court held that "individuals who, as officers of the state, . . . threaten and are about to commence proceedings . . . to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a

Federal court of equity from such action."   209 U.S. at 155–56.

The Supreme Court has applied that holding in preemption cases, making it clear that, in such cases, the equitable cause of action is available only to enjoin acts of regulation.  *See Armstrong*, 135 S. Ct. at 1384 ("[W]e have long recognized [that] if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted.");  *see also, e.g.*, *Ray v. Atl. Richfield Co.*, 435 U.S. 151, 155 (1978); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255–56 (2011).  In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), the Supreme Court reiterated the basis for these types of suits: "A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute . . . presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve," *id.* at 96 n.14; *see also Golden State II*, 493 U.S. at 113 (Kennedy, J., dissenting) ("[A] private party can assert an immunity from state or local regulation on the ground that the Constitution . . . allocate[s] the power to enact the regulation to the National Government, to the exclusion of the States."); *cf. Alameda Newspapers, Inc. v. City of Oakland*, 95 F.3d 1406, 1413 (9th Cir. 1996) ("If a municipality's action [in a case asserting preemption by the National Labor Relations Act] does not rise to the level of regulation, it is not preempted.").  Although the *Shaw* Court dressed the inquiry in the language of "jurisdiction," rather than of "cause of action," the two inquiries are functionally the same in asking why a plaintiff should be allowed to bring the suit in federal court.  Nevertheless, while the questions are intertwined, the Supreme Court recently suggested that the cause-of-action inquiry is not jurisdictional.  *See Lexmark*

*Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014).

Moreover, the Supreme Court's cases dealing with preemption specifically in the foreign affairs domain do not suggest the availability of an equitable cause of action outside of the regulatory context. *See, e.g.*, *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 409–12 (2003) (insurance companies brought action alleging preemption of California law requiring disclosure of policies issued to persons in Europe in effect between 1920 and 1945); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 367, 370–71 (2000) (companies who did business with Burma brought action alleging preemption of a Massachusetts statute, the purpose of which was to prevent or discourage them from transacting business with Burma); *Zschernig v. Miller*, 389 U.S. 429, 432–33 (1968) (striking down state law regulating the inheritance rights of foreign beneficiaries of Oregon residents because it did so in a way that constituted "an intrusion by the State into the field of foreign affairs which the Constitution entrusts to the President and the Congress"). Nor do our cases in this area suggest a broader cause of action. *See, e.g.*, *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1070–71, 1077 (9th Cir. 2012) (en banc) (foreign insurance companies could raise defensively a challenge to a California law that subjected them to suits in California "by overriding forum-selection provisions and greatly extending the statute of limitations for a narrowly defined class of claims" in a way that constituted an intrusion on the conduct of foreign policy); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 957–59 (9th Cir. 2009) (similar); *Deutsch v. Turner Corp.*, 324 F.3d 692, 703, 716 (9th Cir. 2003) (similar).

In sum, this case involves a purely expressive, non-regulatory action by the City of Glendale that is not alleged to, and does not, implicate any right conferred by the Constitution or laws of the United States, the predicate for a Section 1983 cause of action. Moreover, because the conduct of the City of Glendale does not subject plaintiffs to an enforcement or other regulatory action, it does not come within the category of cases in which an equitable cause of action would be available to restrain conduct that touches on the power of the President or Congress in the area of foreign affairs.