**NOT FOR PUBLICATION**

FILED

JAN 4 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| RENE CABRERA, | No. 19-16466 |
| Plaintiff-Appellant, | D.C. No. 5:11-cv-01263-EJD |
| and | |
| RICK WOODS, individually and on behalf of Others Similarly Situated, | MEMORANDUM[*] |
| Plaintiff, | |
| v. | |
| GOOGLE LLC, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted August 12, 2020
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: TASHIMA and CHRISTEN, Circuit Judges, and BATAILLON,[**] District Judge.

Concurrence by Judge TASHIMA

In this putative class action, we consider the district court's dismissal, with prejudice, of class representative Rene Cabrera's complaint for lack of standing. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the district court's order granting Google's motion to dismiss, and remand.[1]

1.      We first consider whether the district court erred by dismissing Cabrera's complaint for lack of standing. We review that issue de novo, *Gingery v. City of Glendale*, 831 F.3d 1222, 1226 (9th Cir. 2016), and we review underlying factual findings for clear error, *Preminger v. Peake*, 552 F.3d 757, 762 n.3 (9th Cir. 2008). To have Article III standing, a plaintiff must show: (1) an injury; (2) that is caused by the defendant's conduct; and(3) that likely is redressable by a favorable judicial decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

The district court concluded that Cabrera had suffered no injury because Cabrera and his wife sold Training Options' (TO) tangible and intangible assets,

[**]      The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

[1]      Because the parties are familiar with the facts, we recite them only as necessary to resolve the issues on appeal.

2

including any causes of action against Google. But Cabrera's standing is premised in part on ownership of the AdWords account, which was not transferred by the Asset Purchase Agreement (APA). Cabrera was a party to the AdWords contract. He registered his personal email address for a Google account and signed up for the AdWords program. He accepted the terms of the AdWords Agreement by clicking through the document. Cabrera also continued to use the AdWords account from his personal email address after the sale of TO, and he testified that he did not transfer the AdWords account when he sold TO "[b]ecause it was my personal account."

The concurrence argues that mere ownership of the account does not give rise to a cognizable injury because Cabrera did not incur liabilities or obligations imposed by the AdWords agreement, and because Cabrera made only occasional use of the account after he sold TO. But in 2010, months after the sale of TO, Cabrera personally created and paid for a test AdWords ad campaign linked to his personal email address. And Cabrera's AdWords account was not cancelled for lack of activity until 2018, nine years after Cabrera sold TO. Cabrera's personal control over the AdWords account after the sale of TO and his receipt of the benefits of the AdWords agreement suffices to support his claim for ownership of the account and creates a cognizable injury for standing purposes.

3

The district court also erred by concluding that the sale of TO included the sale of TO's causes of action against Google. Per the relevant clause of the APA, the assets sold included "general intangibles . . . pursuant to the terms and conditions of this [APA] and any addendums or amendments." The APA contained an addendum that defined six intangible categories, but none of the categories contemplated the transfer of TO's causes of action. And pursuant to Florida law, which governs the APA, "it is a general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject." *Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703 (Fla. Dist. Ct. App. 2006).

Cabrera also produced an affidavit from the other party to the APA who stated that TO's causes of action were not part of the sale of TO. *See Hollinger v. Hollinger*, 292 So. 3d 537, 542 (Fla. Dist. Ct. App. 2020) (noting extrinsic evidence is relevant to interpreting latent ambiguity in contract). Finding the affidavit was belatedly produced pursuant to Cabrera's Fed. R. Civ. P. 26 obligations, the district court did not consider the affidavit pursuant to Fed. R. Civ. P. 37, a decision we review for abuse of discretion. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105–06 (9th Cir. 2001).

Rule 26 only obligates a party to disclose information that it "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Here, Cabrera consistently asserted that he relied on his status as a party to the AdWords contract to establish standing. Rule 26 did not require Cabrera to anticipate Google's defenses and produce evidence to defeat defenses that Google had not yet asserted. The district court erred by excluding the affidavit, and consequently erred by concluding that even if Google breached the AdWords contract, Cabrera did not suffer a cognizable injury.

2. Because we conclude the district court erred by ruling that Cabrera's claim to standing failed for lack of a cognizable injury, we vacate the district court's dismissal on that ground and do not reach whether the district court should have granted Cabrera leave to supplement his pleadings.

**VACATED AND REMANDED.**

Defendant-Appellee Google to bear costs.

FILED

JAN 4 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Cabrera v. Google LLC*, No. 19-16466

TASHIMA, Circuit Judge, concurring in part and concurring in the judgment:

Although I concur in the majority's "conclu[sion] that the district court erred by ruling that Cabrera's claim to standing failed for lack of a cognizable injury," Maj. Memo. at 5, I cannot agree with the majority's acceptance of "Cabrera's standing . . . premised on ownership of the Ad Words account, which was not transferred by the Asset Purchase Agreement (APA)." *Id.* at 3.

Mere ownership of the account cannot and does not give rise to a cognizable injury under the circumstances of this case, where the owner did not incur any of the liabilities or obligations imposed by the agreement and was not the beneficiary of any of its prospective benefits. Here, Cabrera appears to be no more than the classic straw purchaser.

First, Cabrera sold Training Options ("TO") long before he was named as plaintiff in this action. And for most, if not all, of that period, the Ad Words account was inactive. Moreover, for any use made of the account during the period that Cabrera owned TO, the bills for advertisements were paid by TO, not Cabrera. Although Cabrera claims that he "continued to use and maintain control of the Ad Words account . . . for nearly ten years after he sold TO," in fact, during that period, the account was used only for occasional "tests" and the account was cancelled by Google for lack of activity.

Cabrera testified in his deposition that he did not use the Ad Words account after selling TO in 2009, except that he "might have entered a test ad or something." Cabrera further testified that he used Ad Words to buy advertising for TO from 2008 to 2009, that TO paid for the advertising, and that he did not use the account to buy advertising for anyone other than TO. From these admitted facts, the district court correctly concluded that "Training Options, and not Cabrera, sustained the alleged injury resulting from the alleged overpayment of advertising services through Google's AdWords program and pricing scheme." Thus, even though Cabrera was the nominal owner of the Ad Words account, the liabilities and obligations under the account were assumed by TO, not Cabrera, and, likewise, the intended beneficiary of advertising under that account was also TO, not Cabrera.[1]

For these reasons, I respectfully suggest that the majority errs in relying on Cabrera's bare ownership of the Ad Words account to give rise to a cognizable injury to Cabrera and, thus, to serve as a basis that he has met the concrete injury requirement to give rise to Article III standing, and I do not join in that portion of

---

[1] The majority notes that Cabrera "paid for a test AdWords ad campaign," and "thus maintained personal control over the AdWords account *after the sale of TO*." Maj. Memo at 3–4 (emphasis added). But, obviously, what Cabrera did with the AdWords account *after he sold TO* is of no moment. Cabrera does not claim and nothing in the record supports that anything Cabrera might have done with the AdWords account after he sold TO had anything to do with, or in any way benefitted, TO.

the disposition.

•  ●  •

I conclude, however, that even without reliance on Cabrera's ownership of the Ad Words account, there remains a disputed issue of fact of whether Cabrera's sale of TO included the sale of TO's causes of action, including those causes of action which arose under the Ad Words account. For this reason, I concur in the majority's judgment vacating the district court's judgment and remanding for further proceedings.